## RHEA v. BAGLEY

### Opinion delivered January 23, 1897.

ADVANCEMENT—CONVEYANCE TO CHILD.—A conveyance of land to minor at the request of their father who purchased it constitutes an advancement, and they become entitled to possession of it from the time of the delivery of the deed.

DEED—ACCEPTANCE.—The acceptance of a deed to minors by their father is a sufficient delivery, the conveyance being beneficial to them.

PARENT AS NATURAL GUARDIAN—LIABILITY FOR RENTS.—A father who collects rents of land purchased and paid for by him, but conveyed to his minor children at his request, is liable to account to them therefor, although the statute (Sand. & H. Dig., § 3568) gives to him, as natural guardian, the custody of their estate, and provides that "when such estate is not derived from the person acting as guardian, such parent shall give security and account as other guardians," as the statute does not repeal so much of the common law as gave to the minor child the right to the rents and profits arising from property given him by his parents.

Appeal from Lawrence Circuit Court, Eastern District.

JAMES W. BUTLER, Judge.

*J. K. Gibson* and *J. M. Moore* for appellant.

The effect of the conveyance was to vest the title in the minors, and they acquired a present interest. 45 Ark. 481; 48 *id.* 17; 51 *id.* 530; 52 *id.* 188. On the execution and delivery of the deed to the father, the children became entitled to the rents and profits, and the

father was accountable as their natural guardian during his life for such rents, etc., and his estate is liable. 15 Grat. 513; 34 Ala. 581; 64 Ga. 768; 7 Cow. 36; 8 Fla. 144; 7 Wend. 354; 1 Blackstone's Com., marg. p. 461. Where a father makes a gift to an infant, and takes possession, or holds as natural guardian, his possession is that of the infant. 3 Mon. 35; 7 id. 97; 4 Greene (Ia.), 211; Thornton on Gifts, sec. 174. The rule is the same whether the gift is from the father or from a stranger. 8 Ark. 107; 10 id. 224.

*Chas. Coffin* for appellee.

All the circumstances show that an advancement was intended to take effect on the father's death. As the natural guardian, the father was not liable to an accounting for rents. Sand. & H. Dig., sec. 3568. The cases cited by counsel all refer to foreign acquisitions, or to estates acquired from sources other than the natural guardian, except 64 Ga. 768, which is not in point.

BATTLE, J. Moses B. Rhea purchased of Mrs. Mary A. Boas two lots, and paid for the same. She conveyed them, at the request of the purchaser, to his two minor sons, James M. and W. P. Rhea, by deed bearing date the first day of March, 1887, the father "remarking at the time that he gave the property to the boys." The sons having no curator or guardian, the deed was delivered to the father, and he took "charge" of the lots, "and collected all the rents arising from the same up to the date of his death," which occurred in March, 1893. After his death, James M. Rhea, and G. A. Henry, as guardian of W. P. Rhea, presented an account against his estate for the rents collected by him, amounting to $2,511, properly sworn to, which was disallowed by the probate court. On appeal to the circuit court, it was admitted by all parties as evidence

that the amount of rents collected by the deceased in his lifetime was substantially the amount claimed in the account presented. The claim was disallowed by the circuit court, and the plaintiffs appealed.

Effect of
conveyance
to child.

The conveyance of the lots to the two minor sons, at the request of the father, was an advancement. The title vested in them, and they became entitled to the possession of the lots from the time of the delivery of the deed to their father. *Robinson* v. *Robinson*, 45 Ark. 481; *Bogy* v. *Roberts*, 48 Ark. 17; *Eastham* v. *Powell*, 51 Ark. 530; *Kemp* v. *Cossart*, 47 Ark. 62; *White* v. *White*, 52 Ark. 188.

Acceptance
of deed by
father.

The acceptance of the deed by the father for the sons, they being minors, was a sufficient delivery, the conveyance being beneficial to them. *Eastham* v. *Powell*, 51 Ark. 530; Tiedeman, Real Property, sec. 814; Thornton, Gifts and Advancements, secs. 174 and 175; 2 Jones, Real Property, sec. 1276.

Liability
of father
for rents.

But it is said by the appellee that "Moses B. Rhea purchased the property, and paid for it, and took the deed in the names of his two minor sons, intending for it to take effect as an advancement at the time of his death, and that he never intended for them to enjoy the rents of the property during his life time; and his intentions were manifested by his actions." There is no evidence of any interest in the lots being conveyed to or retained by the father. But it is said that he remained in possession of the lots until his death, and erected a brick house on them. If this be true, it does not show an intention that any part of the estate or interest conveyed to the sons should not be an advancement.

At one time it was held that the father's remaining in possession, making improvements, and enjoying the rents after his purchase, were sufficient to show that no advancement was intended. That doctrine is now exploded. *Bogy* v. *Roberts*, 48 Ark. 17. In *Kemp* v.

*Cossart*, 47 Ark. 62, a father, as the agent of his son, purchased land, and caused it to be conveyed to the son, and paid a part of the purchase money, the son paying the remainder. The father took possession, and made improvements on it, at the same time representing that the land was his son's. The court said: "The natural and legal presumption is, the improvements were made by him as an advancement to his son."

But it is said that Moses B. Rhea was the natural guardian of the two sons during their minority, and as such was not accountable for the rents of the property conveyed to them. So far from this being true at common law, he had no right to intermeddle with the ward's property. Schouler's Domestic Relations (3d Ed.), sec. 285; 2 Kent's Com., marg. p. 220. It necessarily follows that he was not entitled to the rents and profits which accrued from the same.

The statute upon this subject provides: "In all cases not otherwise provided for by law, the father while living, and, after his death, or when there shall be no lawful father, then the mother, if living, shall be the natural guardian of their children, and have the custody and care of their persons, education and estates; and, when such estate is not derived from the persons acting as guardian, such parent shall give security and account as other guardians." But it does not repeal so much of the common law as gave the minor child the right to the rents and profits arising from property given him by his parents. As to such property, the father is only entitled to the care, and is relieved from the necessity of giving security and accounting to the probate court. The reason for this exemption is that, having given the property to the child, the presumption is, he will have regard and consideration enough for the interest of the child to take care of the property and its rents and profits, and honestly account for the same.

If appellants had been of age at the time Mrs. Boas executed the deed to them, they would certainly have been entitled to the possession of the lots and the rents and profits of the same, and could have held their father and his estate liable for the rents collected and converted by him. *Persoll* v. *Scott*, 64 Ga. 767. Did their minority withhold from them any of these rights? We think not.

We have disposed of the reasons given or shown why the claim of appellants should not be allowed, and find that the circuit court erred in disallowing it.

The judgment is therefore reversed, and the cause remanded for a new trial.

BUNN, C. J., (dissenting.) The sole question in this case is whether or not a father who made a gift of real estate to his minor children can be called to account for the rents and profits of the same accruing during their minority. It is needless, therefore, to discuss the several propositions made by the appellants, which, primarily at least, only point to the nature and character of the title by which the minor children hold the corpus of the estate—the subject of the gift. Thus, it cannot be denied that the conveyance of the vendor made to the sons at the instance of the father vests the title in the sons *in præsenti*. The cases of *Robinson* v. *Robinson*, 45 Ark. 481, *Bogy* v. *Roberts*, 48 Ark. 17, *Eastham* v. *Powell*, 51 Ark. 530, and *White* v. *White*, 52 Ark. 188, in so far as the issues made therein, announce correct principles of law; that is to say, that a gift from a father to his children is presumptively an advancement, rather than a trust or other conditional provision, and also that ordinarily a parol trust in opposition to the terms of the deed cannot be established by extraneous proof, although this principle is not without modification according to the facts in some cases. Sections 3480

and 3481, Sand. & H. Dig.; *Gainus* v. *Cannon*, 42 Ark. 503; *Bland* v. *Talley*, 50 *ib.* 71.

Nor is it necessary in this proceeding to cite authorities to establish a legal truism, such as that in a contest between the creditors of the father and his minor children to subject property given by him to them, of which he retains possession, to the payment of his debts, his possession is that of the children, and is therefore no badge of fraud, as is sometimes the case where one gives or sells property to a third party and retains possession. This was the only point in the cases of *Kenningham* v. *McLaughlin*, 3 T. B. Mon. 30; *Forsyth* v. *Kreakbaum*, 7 *id.* 97; *Young* v. *Gammel*, 4 Greene (Ia.), 211; *Dodd* v. *McCraw*, 8 Ark. 107; and *Danley* v. *Rector*, 10 Ark. 224,—cited by counsel in support of the doctrine. In the cases of *Evans* v. *Pearce*, 15 Grattan, 513; *Nelson* v. *Goree's Administrator*, 34 Ala. 581; *Persoll* v. *Scott*, 64 Ga. 768; *Jackson* v. *Combs*, 7 Cowen, 36; *Linton* v. *Walker*, 8 Fla. 144; *Hyde* v. *Stone*, 7 Wend. 354, the conveyances to the children were from third persons, and constitute in no sense gifts from the father or mother, acting at the time as natural guardian, and therefore, from the standpoint which I claim to discuss the case, these authorities have no application.

Our statute defining who shall be natural guardians of minors, and the extent of their authority as to the persons and estates of their wards, is section 3568, Sand. & H. Dig., which reads as follows, to-wit: "In all cases not otherwise provided for by law, the father while living, and, after his death, or when there shall be no lawful father, then the mother, if living, shall be the natural guardian of their children, and have the custody and care of their persons, education and estates; and when such estate is not derived from the person acting as guardian, such parent shall give security and account as other guardians." And section 3580 reads: "Where

a minor shall be entitled to, or possessed of, any estates not derived from the parent who shall be the natural guardian at the time, and it shall be suggested to the court that such parent is incompetent to take care of such estate, or is mismanaging or wasting the same, the court may issue a notice to such person to appear before it at a stated time, and show cause why a curator shall not be appointed or chosen; and if, on due notice, no sufficient cause be shown, the court shall appoint a curator for the management of such estate for the minor, if under fourteen years of age, or, if over that age, admit the minor to choose one in the same manner and subject to the same restrictions as provided for the choice or appointment of guardians for minors over that age." These sections were portions of the act approved April 22, 1873, and materially modified the pre-existing statute enacted and approved February 14, 1838, and which was simply a reaffirmance of the common law rule on the subject, so far as our customs and state of society would permit, and read as follows, to wit: "The father shall be the natural guardian of his child, shall have the care of his person and education, but in no case shall he have the care and management of his estate, unless he be appointed by the court for that purpose, when he shall give bond and security in the same manner as other guardians." Section 4, chapter 72, Revised Statutes.

It will be seen that the act of April 22, 1873—the law now in force—makes the father primarily the natural guardian of his children, and confers upon him, as such, the custody and care of their persons, their education and their estates, with this condition as to their estates: that if the same are derived from others than the person who is the natural guardian at the time, then such natural guardian, in order to be authorized to take the custody and management of the estate, must

first give security (bond), and afterwards account as other guardians; and the natural inference is that, on failure to give such security in such case, the natural guardian would be deprived of his otherwise lawful right and privilege to control the estate of his child. The converse of the proposition that he shall give security and account when the estate is not derived from himself is also true; that is to say, where the estate of his child is derived from himself, he is not required either to give security or to render an account. This, of course, does not apply to the corpus of real estate belonging to the child, for that is not a thing in itself to be secured by bonds and other money obligations.

Section 3580, Sand. & H. Dig. (being a portion of the act of 1873), negatively, at least, denies to the child, or any one acting for him, the right to move the proper court to appoint a curator of his estate in the hands of his natural guardian, and which was derived from him, even where he is guilty of mismanagement or waste. In respect to the property derived from him, the father, for instance, acting as natural guardian, has the unquestioned right to act as natural guardian, as long as he is *sui juris* as to the matters generally, and is not removable from office except for natural inability to act. He is not chargeable with mere mismanagement, or even waste, in respect to such property of his child as he has given him; nor is he required to give bond and security to indemnify his ward in such case for any loss that may occur by reason of his control and management of the property. The statute goes still further (as if in anticipation of the contention that, after all, being relieved of the necessity of giving bond and security does not relieve him of personal liability), and provides that he shall not be required to account for his management of the chattels of his ward derived from himself.

The very change in the law as it stood in 1838, by the act of April 22, 1873, but emphasizes the doctrine I have endeavored to present,—that there is no law by which a natural guardian can be held liable as the father is sought to be held in the case at bar. There is no question as to the constitutionality of the statute, as it now stands, nor does it contravene any principle of natural or inalienable right, and it has but one meaning, so far as I can see.

Where the father in his lifetime was not liable, his estate after him, of course, is equally free from liability. I think the case should be affirmed.