## STAGGERS *v.* WHITE.

## Opinion delivered December 13, 1915.

1. DEEDS—GENUINENESS—ATTACK—BURDEN OF PROOF.—A deed, executed and acknowledged, is *prima facie* evidence of its recitals, and the burden is upon the party attacking the same, to show that the signatures thereto were forged.

2. DEEDS—EXECUTION—DELIVERY TO THIRD PARTY—GRANTEE A MINOR.— In an action in ejectment, *held,* that a deed under which appellants claimed title was executed by the grantors as set out therein, and duly acknowledged, and that the same was duly delivered to a third party to be held for the benefit of the grantees, who were minors.

3. DEEDS—ACCEPTANCE BY GRANTEE—PRESUMPTION.—The acceptance of a deed on the part of the grantee, the same being for his benefit, will be presumed.

4. DEEDS—DELIVERY TO THIRD PERSON—TITLE—INFANT GRANTEE—AC-CEPTANCE.—Where R., an infant, is named as grantee in a deed from his grandfather, and his grandmother accepts a delivery of the deed, for the benefit of the infant, such delivery and acceptance is sufficient to vest title in the infant.

Appeal from Hempstead Chancery Court; *James D. Shaver,* Chancellor; reversed.

### STATEMENT BY THE COURT.

Appellants sued the appellees to recover possession of·a certain tract of land. The suit was begun in ejectment. The appellants claimed under a deed purporting to have been executed to them by August Staggers and Millie Staggers, his wife. The deed recites a consideration of $200, and was acknowledged January 3, 1891, and filed for record August 26, 1895.

The appellee answered, setting up, among other things, that the deed under which appellants claimed the title was a forgery. They made their answer a cross-complaint and asked that the deed be cancelled as a cloud upon their title.

The chancellor found that the deed was never delivered, and that one of the appellants, Rush Staggers, was not born until January 22, 1892, more than a year after the execution of the deed, which was dated January 3, 1891; that the same was a fraud upon the rights of the

appellees; that the purported grantors had no knowledge of the deed, and therefore entered a decree cancelling and setting aside the deed and quieting the title in the appellees. The appellants duly prosecute this appeal. Other facts stated in the opinion.

*D. B. Sain* and *T. D. Crawford;* for appellants.

1. If, in finding against the plaintiffs, the chancellor meant to hold that the suit was barred by the statute of limitations, he was in error, because, in order to have the advantage of this statute, one must plead it. 77 Ark. 379.

2. The testimony shows a delivery of the deed to the grandmother of the infant grantors, with instructions to have the deed recorded at the grantor's death; and there is no evidence that the grantor retained any control over the deed, or that he intended that it should be revocable at his will. The delivery of the deed was sufficient in law. Devlin on Deeds, § 280; *Id.*, § 280a; 216 Ill. 161, 74 N. E. 775; 13 Johnson, 285, 7 Am. Dec. 375; 53 Am. St. 553, note; 63 Ark. 374; 77 Ark. 89.

3. Not only was the burden upon the appellees to establish the invalidity of the deed, but it was essential, in order to justify its cancellation, to show its invalidity by evidence that was clear, unequivocal and decisive. 13 Cyc. 737; 96 Ark. 251; 100 Ark. 565. The evidence does not sustain the chancellor's finding that the deed was a forgery. The weight of the testimony is to the contrary.

*Etter & Monroe,* for appellees.

1. The act of signing and sealing a deed gives no effect without delivery. 24 Ark. 244.

If a deed be retained in the possession and control of the grantor until his death, it can not become effective by delivery thereafter by an agent under his instructions. 67 Miss. 511; 34 N. H. 460; 66 Me. 316; 30 Wis. 644.

A deed in due form, properly signed and acknowledged, but never delivered, its existence being unknown to the grantee until after the grantor's death, passes no title. 79 Ia. 61; 61 Ia. 26. See also, 12 L. R. A. 173, note.

Intention is necessary to the delivery of a deed, and must exist in the minds of the parties, evidenced by words or acts. 80 Me. 209; 121 Ill. 91; 100 Ark. 427; 63 Mich. 111. See also, 101 Ill. 429; 58 Vt. 353.

2. The evidence goes to show that the alleged deed was not executed at the time it bears date, and that Rush Staggers was not born at that time. The chancellor's findings will not be disturbed unless the preponderance of the evidence against them is reasonably clear. 44 Ark. 216; 97 Ark. 574.

Wood, J., (after stating the facts). (1) The deed was exhibited with the complaint and purported to be signed by August Staggers and Millie Staggers, by their mark, and the deed was duly acknowledged on the 3d of January, 1891. The answer denying its genuineness was not verified, nor was there any separate affidavit denying the genuineness of the deed. The deed was therefore *prima facie* evidence of its recitals, and the burden was upon the appellees to show that the deed was a forgery. See Kirby's Digest, § 3108; 13 Cyc. 737, and cases cited; *Hall* v. *Rea,* 85 Ark. 269; *Dawkins* v. *Petteys,* 121 Ark. 498.

The appellants and the appellees were negroes, and the interest upon the one side to establish the deed is the same as that upon the other to destroy it, and should be so considered as affecting their credibility.

Mrs. Bernell McFadden, the mother of Rush Staggers, one of the appellants, testified that he was born October 22, 1890; that his birth was recorded in her family bible; that while he was small his grandfather sent for him to come to his house, that he wanted to know his name so that he could make him a deed; that she went down to August Staggers' carrying Rush Staggers with her; that her brother, Robert Taylor, was present, wrote the deed and took the acknowledgment, and gave the deed to Millie Staggers, wife of August Staggers; that August Staggers told Taylor to turn the deed over to Millie Staggers. He said, "If anything happened to him before he had them recorded to give them to George McFadden and have them recorded."

Taylor testified that he was a justice of the peace, and that in 1891 some deeds were prepared by him for August Staggers and his wife to Nannie Staggers and Rush Staggers, two of his grandchildren, on January 3, 1891; that August Staggers sent for him to come down, and that, so far as his knowledge now is concerned, he sent for him to take an acknowledgment of some deeds. He stated that he did not write the body of the deed dated January 3, 1891, signed by August and Millie Staggers, to Rush Staggers and Nannie Staggers; that he put the signature of August and Millie Staggers to the deed at their request and filled out the acknowledgment as justice of the peace. After he had taken the acknowledgment he passed the deed back to Uncle August; that as far as the witness could remember Uncle August had the deed in his hand at the time witness left. In further explanation, he says that neither August nor Millie Staggers could write their names; that he wrote their names for them at the bottom of the deed; that they signed by mark. On cross-examination, he stated that he supposed that Judge Conway wrote the body of the deed from the fact that Judge Conway attended to Uncle August's business, and August told witness that Judge Conway made the deeds out for him. He also testified that Rush Staggers was quite a baby at the time the deed was executed.

George McFadden testified that he was the son-in-law of August Staggers; that he received some deeds from his wife, with instructions to have them recorded, which he had done; that at one time August Staggers told him he had made the deed to those children (appellants); that he had done so because his other children had all he intended for them to have. He stated, on cross-examination, that he would not have had the deed recorded if it had not been for Jeff Staggers. After witness got the deeds, he saw his mother-in-law and asked her about the deeds and she stated that August told her to hand those deeds to witness and for witness to have them recorded if he (August) died.

Rush Staggers, Jr., one of the appellants, stated that he was twenty-four years old last October. His deposition was taken in December, 1914.

Jeff Staggers, one of the appellees, testified that he did not keep a record of Rush's birth, but that Lou Brown caught it by her boy's age. The reason he remembered the date of Rush Staggers' birth was that witness' wife's grandmother got burned on January 21 and died on January 22, the day this boy was born. He was born January 22, 1892. He never heard of Rush Staggers' claim to the land in controversy until the suit was brought.

August White, one of the appellees, testified that Rush Staggers was born January 22, 1892. He also never heard of appellants' claim to the land until the suit was brought.

Willis Walker testified that Rush Staggers was born January 22, 1892; that witness' daughter was born January 17, 1892, and Jeff White on the 19th or 20th of January, 1892. He also never heard of the claim of appellants until the suit was brought.

Lou Brown testified that she had known Rush Staggers ever since he was born. He was born in January, 1892, January 22d. She had the date of his birth in her bible. She married Jim White, Rush Staggers' uncle. Her boy, Jeff, was born on the 20th of January, 1892, and Rush was born on the 22d of January, 1892. On cross-examination she stated that she did not have the date of the birth of Rush Staggers down in her bible, but she did have the date of the birth of her own boy, and that Rush was born two days later; that she was living within a mile of them when he was born.

Appellants explain their delay in bringing suit to recover the land by saying that they thought that their grandmother was entitled to a life interest in the same.

The original deed was before the chancellor and has been brought before us for inspection. Our examination of the signatures to the deed and the names as filled out in the acknowledgment convinces us that the signatures to the deed were written by the same person who filled out the acknowledgment. There is such a striking simi-

larity between the letters composing the signatures to the deed and the names of the same parties as filled out in the acknowledgment that it appears to us reasonably certain that these were written by the same person, whereas the letters constituting these names as written in the body of the deed, and the other writing in the deed, show that the body of the deed was written by a different person. From our inspecion of the deed and a comparison of the letters constituting the signatures we conclude that the testimony of Taylor, the justice of the peace who took the acknowledgment and stated that he wrote the signatures of the makers to the deed and filled out the acknowledgment, is correct.

While Mrs. McFadden, at one place in her testimony, on direct-examination, says: "After writing the deed Robert Taylor read it over to him and his wife," thus indicating that the deed was written by Robert Taylor; when she was recalled for further examination she stated as follows: "I do not know whether he wrote all of the deed or part of it." Robert Taylor testified that he did not write the body of the deed, but that he did write the signatures of August and Millie Staggers and filled out the acknowledgment. When this testimony is considered together there is no real conflict between them. The testimony of Mrs. McFadden shows that she did not know whether Taylor wrote the whole deed or not, but the testimony of Taylor is unequivocal on this point, and when the handwriting in the body of the deed is compared with the handwriting of the signatures to the deed and the names contained in the acknowledgment it appears clear to us that Taylor's testimony is the truth as to the execution of the deed.

The testimony of Taylor is not overcome by the testimony on behalf of the appellees to the effect that Rush Staggers, one of the grantees in the deed, was not born until after the date of the alleged execution of the deed. There is a decided conflict in the evidence on this point, but the testimony of the mother and of Taylor, and of the appellant Rush Staggers himself as to his age, it seems to us is more reasonable and should carry greater

weight than the testimony of the witnesses on behalf of the appellees to the effect that he was not born until January 22, 1892. The testimony of the mother of the child, who had the birth recorded, as she says, in her family bible, and the child himself, who testifies as to his age, and the testimony of Taylor that Rush Staggers was a baby at the time the deed was executed, to our minds decidedly preponderates on this point over the testimony of the witnesses tending to show that Rush Staggers was born after the date of the execution of the deed.

The chancellor therefore erred in finding that August Staggers and Millie Staggers had no knowledge of the deed and that same was a fraud upon the right of the appellees.

(2) The court erred also in finding that the deed was never delivered to the appellants. While Taylor's testimony is to the effect that at the time of the execution of the deeds, after taking the acknowledgment, that he gave them to the maker, August Staggers, and that he had them in his hand when he left, yet the other testimony tends to prove that August Staggers turned the deeds over to his wife, Millie Staggers, with directions that if anything happened before he had them recorded to give them to George McFadden to have them recorded. While Mrs. McFadden, the only other witness present when the deeds were executed, testifies that Taylor gave them to August Staggers' wife after he had prepared them and taken the acknowledgment, her testimony simply meant that August Staggers intended that the deeds be delivered to his wife for the appellants, his grandchildren, and that the deeds should be recorded for the benefit of appellants.

The testimony as to what Millie Staggers said concerning the delivery of the deed to a third party for the benefit of appellants is not competent testimony. But the testimony tending to show what was actually done with the deed was competent, and this testimony, taken in connection with what August Staggers said, showing his intention to part with dominion over the deed, was competent, and when all the testimony in the record is consid-

ered together it shows clearly, to our minds, that the deed was delivered by August Staggers to a third party to be held for the benefit of the appellants. Witnesses give in detail what Staggers said during his life and after the execution of the deed, and this testimony shows that it was his intention to give the land in controversy to the appellants because he had provided for his own children and had given them all he intended for them to have. One witness stated that August, in explaining why he had given the appellants the land, said that he did not think he would be doing these appellants justice unless he provided for them in that way.

(3-4) The acceptance of the deed on the part of the appellants, the same being for their benefit, will be presumed. *Russell* v. *May,* 77 Ark. 89. There was testimony to the effect that the grantor had delivered the deed to the grandmother of the appellants, with instructions to have the deed recorded at his death, and that these instructions had been carried out. The testimony thus tended to show that the grandmother had accepted the deed as depositary or trustee for the appellants. The acceptance of the deed on her part, being for the benefit of the infant appellants, was sufficient to vest title in them. *Rhea* v. *Bagley,* 63 Ark. 374-6.

Appellees did not set up either limitations or laches. So we do not have those questions to consider.

The judgment is therefore reversed and the cause is remanded with directions to enter a decree in accordance with the prayer of appellants' complaint, for possession of the land in controversy, and dismissing the appellees' cross-complaint for want of equity.