THOMPSON *v.* KINARD.

Opinion delivered June 1, 1925.

1. DEEDS—FORGERY—BURDEN OF PROOF.—The burden of proof is on one who alleges the forgery of a deed to establish it by a preponderance of the evidence.

2. DEEDS—FORGERY—EVIDENCE.—Evidence *held* to sustain a finding that a power of attorney was not forged.

3. PRINCIPAL AND AGENT—POWER OF ATTORNEY TO EXECUTE DEED.—Where one known by several names executed a power of attorney authorizing the execution of deeds to real and personal property in such manner as the principal could do, the attorney was empowered to execute a deed by a name by which the principal was known, though it was not the name that was signed to the power of attorney.

4. PRINCIPAL AND AGENT—RATIFICATION OF AGENT'S ACT.—A party giving a power of attorney will be held to have ratified a deed by the attorney by receiving a cash payment and accepting the notes for the balance of the purchase money.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

STATEMENT OF FACTS.

Lena Thompson brought this suit in equity against J. T. Kinard, W. J. Kinard and Lula Payne to cancel and set aside a deed purporting to have been executed by J. T. Kinard, as attorney in fact for Lizzie Oliver to Lula Payne to a lot in the city of El Dorado, Union County, Arkansas.

According to the allegations of the complaint, Lena Thompson is the mother of Lizzie Oliver, who died intestate in said county and State in January, 1922, and left surviving her her mother as her sole heir at law. The

suit was defended on the ground that Lula Payne had acquired the legal title to said property.

The deed in question purports to have been executed on the 8th day of August, 1921, and is signed "Lizzie Oliver by J. T. Kinard, attorney in fact." The consideration recited in the deed is $275. $137 of the purchase price was paid in cash and the balance is represented by fourteen promissory notes of $10 each, payable respectively on the 10th day of September, 1921, and each year thereafter for the fourteen years. A vendor's lien was reserved in the deed to secure the payment of said notes. The deed was duly acknowledged before W. J. Kinard, a notary public, and a son of J. T. Kinard.

The power of attorney under which the deed was executed was dated June 14, 1921, and was also duly acknowledged before W. J. Kinard, notary public. The body of the power of attorney reads as follows:

"Know all men by these presents:

"That I, Lizzie Alderson, nee Turner, do by these presents constitute and appoint J. T. Kinard of El Dorado, my true and lawful attorney in fact, in my name, place and stead, to execute deeds, leases, receipts and all matters, chattels and goods of any kind, both real and personal, in as true and lawful manner as I myself could do if present, and I hereby ratify and confirm all acts that my attorney shall perform for me and in my name place and stead."

Lena Thompson was the principal witness for herself. According to her testimony she was the mother of Lizzie Allison, who is also known as Lizzie Oliver, Lizzie Turner and Lizzie Alderson.

Lizzie Allison died intestate in Union County, Arkansas, on January 6, 1922. Lena Thompson had another daughter called Sula Henderson. She had two sons named respectively Monroe and Calvin Thompson. She helped her daughter, Lizzie Allison, buy the town lot in question. During the first part of the year 1921, Lizzie Allison lived at Dierks, Arkansas, and came back to El

Dorado in Union County in November of that year. Lizzie Allison lived at Dierks during the month of June, 1921. Lizzie Allison could neither read nor write and could not sign her own name.

Two other witnesses testified that they knew Lizzie Allison, and that she could neither read nor write. They also stated that she could not even write her own name. Monroe Thompson stated that his sister Lizzie Allison lived at Dierks, Arkansas, during the month of June, 1921, and was not in El Dorado during that month. He stated further that she could not read or write.

W. J. Kinard was a witness for the defendants. According to his testimony he has no interest whatever in the case, and is the notary public who took the acknowledgment of Lizzie Allison to the power of attorney, and of J. T. Kinard to the deed to Lula Payne above referred to. He stated in positive terms that the signature to the power of attorney in question was the signature of Lizzie Allison.

J. T. Kinard was also a witness for the defendants. According to his testimony Lizzie Allison could neither read nor write, but she had learned to sign her name in the latter part of her life. He wrote letters for her often, and he usually signed her name to the letters. Lizzie Allison signed the power of attorney in question. The witness collected two of the notes and turned over the money to Lizzie Allison. He transferred and assigned the rest of the notes to Cliff Barton. He executed the deed in question to Lula Payne pursuant to the power given him by the power of attorney. He did not see Lizzie Allison sign the power of attorney; but he wrote it and gave it to Lizzie Allison to be carried to his son, W. J. Kinard, and executed before him as notary public. Pursuant to directions, Lizzie Allison took the power of attorney and left his office. In a short time she returned with the power of attorney. Her name was signed to it as grantor, and it purported to have been executed before W. J. Kinard as notary public.

Cliff Barton was also a witness for the defendants. According to his testimony, he purchased the twelve notes above referred to from Lizzie Allison and paid her for them.

Lula Payne was a witness for herself. According to her testimony both the deed and power of attorney were delivered to her and she filed them for record in the clerk's office. She admitted that she did not do this until after Lizzie Allison had died. Lula Payne paid $275 for the lot in question. She paid $137.50 cash and gave her notes for the balance of the purchase money. She also built a house on the lot, which together with other improvements, cost about $400.

The chancellor found the issues in favor of the defendants, and it was decreed that the plaintiff's complaint be dismissed for want of equity.

The case is here on appeal.

*I. S. Pinkett* for appellant.

*Wilson & McGough,* and *Jones, Ragsdale & Matheney,* for appellees.

Hart, J. (after stating the facts). It is first contended that both the deed executed by J. T. Kinard as attorney in fact for Lizzie Oliver to Lula Payne, and the power of attorney executed by Lizzie Oliver to J. T. Kinard were forgeries.

The burden of proof rests upon the person denying that he signed a deed or acknowledged it to show by a preponderance of the evidence that his signature is a forgery. *Polk* v. *Brown,* 117 Ark. 321, and *Miles* v. *Jerry,* 158 Ark. 314.

To sustain the burden of proof in this respect, the plaintiff testified that her daughter, Lizzie Oliver, did not live in El Doardo, Arkansas, in June, 1921, and that her daughter could neither read nor write. The plaintiff and her son both testified to these facts. Two other witnesses also testified that Lizzie Oliver could neither read nor write. The power of attorney which is claimed to be a forgery purports to have been signed on the 14th day of

June, 1921, and to have been acknowledged on the same day in Union County before W. J. Kinard, as notary public.

Opposed to this testimony on the part of the plaintiff is the testimony of W. J. Kinard to the fact that Lizzie Oliver personally appeared before him on the day in question and signed and acknowledged the power of attorney. This testimony is corroborated by that of his father, J. T. Kinard. The latter testified that he wrote the power of attorney and then gave it to Lizzie Oliver to be carried by her to his son's office and there acknowledged. He said that Lizzie Oliver left his office with the power of attorney and in a short time came back with it signed by herself with a certificate of acknowledgment by W. J. Kinard, a notary public. The witness stated further that, while Lizzie Oliver could not read nor write, during the latter years of her life she had learned to sign her own name.

Neither J. T. Kinard nor W. J. Kinard claim any interest in the lot in controversy, nor do they ever claim to have had any interest in it. Their testimony is corroborated by the fact that pursuant to the power given, J. T. Kinard executed a deed to said lot to Lula Payne and paid that part of the purchase money received by him to Lizzie Oliver and delivered to her fourteen notes for $10 each given for the balance of the purchase money. These notes were transferred by Lizzie Oliver to C. D. Barton, and Barton testified that he paid value received to her for them.

Lula Payne testified that she took possession of the lot in question pursuant to her deed, and built a house on it. She lived in her house for a time with the knowledge of Lizzie Oliver and of the plaintiff. Finally she had a row with the plaintiff about hanging some things on the wire fence between their homes, and this, to her mind, caused the lawsuit.

The chancellor found the issues on the question of forgery of the name of Lizzie Oliver to the power of

attorney in favor of the defendants, and it cannot be said that his finding is against the preponderance of the evidence.

On the question of the forging of the name of J. T. Kinard to the deed but little need be said. Both he and his son before whom he acknowledged the deed testified that he signed the deed and acknowledged it before his son. There is no evidence in the record to contradict their testimony in this respect.

It is next contended that the decree should be reversed because the language of the power of attorney is not broad enough to authorize J. T. Kinard to execute the deed in question for Lizzie Oliver. The power of attorney is set out in our statement of facts. It will be noted that Lizzie Alderson appoints J. T. Kinard her attorney in fact to execute deeds to both real and personal property in as lawful manner as she could do. We think this language is broad enough to show that J. T. Kinard was given the authority to execute the deed in question. The undisputed evidence shows that the daughter of the plaintiff who executed the power of attorney was known under various names. She was called Lizzie Oliver, Lizzie Alderson and Lizzie Turner. Moreover, she ratified the deed executed by J. T. Kinard for her by receiving the cash payment and accepting the notes given for the balance of the purchase money.

It follows that the decree of the chancery court was correct, and must be affirmed.