McSwain *v.* Criswell.

4-8589                                                213 S. W. 2d 383

Opinion delivered June 28, 1948.

Rehearing denied October 4, 1948.

*Botts & Botts,* for appellant.

*Geo. E. Pike,* for appellee.

Robins, J. The chancery court upheld the contention of appellees, Callie Criswell and other heirs at law of M. O. McSwain, deceased, that a deed purporting to have been executed by M. O. McSwain in his lifetime, conveying to W. C. McSwain, appellant, 240 acres in Arkansas county, and a bill of sale said to have been executed at the same time, by which title to certain personal property was transferred from said M. O. McSwain, deceased, to appellant, were both void. This appeal ensued.

M. O. McSwain, a bachelor, died on September 19, 1944. During most of his life he had made his home with appellant, his elder brother. In his latter years M. O. McSwain became afflicted with a cancer which finally caused his death.

The questioned deed and bill of sale showed execution on August 3, 1944, but there was some testimony indicating that this date was erroneous and that the papers were really executed on August 8, 1944. The deed was filed for record on October 3, 1944.

In the complaint it was charged ''that M. O. McSwain did not sign such purported deed, that the deed was not properly acknowledged by a notary public as required by statute, and that such deed was never delivered by M. O. McSwain.'' As to the bill of sale it was alleged in the complaint that it was not signed or delivered by M. O. McSwain in his lifetime.

While it is argued in appellees' brief that ''the actions of W. C. McSwain and members of his family and the officers connected with the transaction, taken as a whole, constitute a fraud upon the rights of the appellees . . . there is no allegation in the complaint as to the acts constituting such fraud; nor was there any testimony tending to show that either the deed or bill of sale was obtained by fraud.

An unacknowledged deed is good between the parties. *Jackson* v. *Allen*, 30 Ark. 110. Hence, the allegation and testimony as to the irregularity of the acknowledgment are not of importance except as they may shed light on the real issue in the case, which is: Did M. O. McSwain, being of sound mind, execute the deed and the bill of sale?

Appellee, Mrs. Callie Criswell, testified that M. O. McSwain and W. C. McSwain were her brothers; that a few days after the death of M. O. McSwain she inquired of appellant about the ''papers'' of their deceased brother and appellant told her he had not found them yet; that some days later he showed her the deed and bill of sale and she told appellant that the signature to these papers was not that of M. O. McSwain; that she would say she didn't believe it is his handwriting; ''I didn't see him write it; but it don't look like his handwriting to me''; that M. O. McSwain had told her he would leave her as much as anybody; that M. O. Mc-

Swain and appellant lived together a long time; that he had stayed with her a part of the time and she had never charged him board until after he had made her pay some interest; that deceased called appellant's home his home and that they worked together, though M. O. McSwain was not able to do more than look after stock; that she thought the two owned their personal property together; that appellant waited on his brother after he got down; that she had never assisted W. C. McSwain in taking care of her brother; that the papers were prepared by Charlie Morgan in DeWitt; that appellant told her it was his brother's wish not to tell her about the papers.

Rev. Frank Fox testified that he assisted W. C. McSwain in taking M. O. McSwain in an ambulance to Savannah, Missouri; that they left Arkansas county on August 1, 1944, and arrived back at the home of appellant on August 3rd; that during this time M. O. McSwain was rational and in his right mind. (This testimony tended to show that M. O. McSwain did not execute any papers on August 3, 1944).

John Stephens, a son-in-law of Mrs. Callie Criswell, testified that he heard appellant tell Mrs. Criswell that he didn't know anything about his brother's papers, and was present later when appellant showed them to her; that M. O. McSwain was in poor health for eight or ten years before his death; that Wert McSwain was son of Jim McSwain, deceased.

Mack Criswell, a son of Callie Criswell, testified that he went with his mother to the clerk's office and found the deed recorded; that he talked with Mr. Bruce Kendall and Charlie Morgan and found out they wrote the deed; that Mr. Morgan stated that he wrote the deed, but it had been acknowledged before Mr. Kendall as notary public; that Mr. Kendall said M. O. McSwain was rational and on this occasion he (Kendall) went to the room of M. O. McSwain and talked with him with no one else present; that M. O. McSwain was not rational the night before he died, but that he was rational when he came back from the hospital; that M. O. lived with W. C.

many years before his death; that M. O. was not able to farm.

Wert McSwain testified that he was a son of a brother (now deceased) of W. C. and M. O. McSwain; that he was with Mrs. Criswell when W. C. McSwain showed her the papers, and she looked at them and said they didn't look like the handwriting of M. O. McSwain; that he was not with them when they talked with Kendall and Morgan; that M. O. McSwain lived with W. C. McSwain many years before his death; that M. O. McSwain had been incapacitated for eight to twelve years before his death.

Bruce Kendall testified that he had been a notary public for 27 years; that he had known the McSwains for many years; that in August, 1944, at the request of W. C. McSwain he went to his home to notarize some papers; that he went into a room with M. O. McSwain, who had already prepared a deed and a bill of sale, and they went over them; that he took M. O. McSwain's acknowledgment to the papers after they made certain corrections and interlineations; that witness made these at the suggestion of M. O. McSwain, who said there were lands mentioned that he did not own and he owned other lands not mentioned; that M. O. McSwain had checked his old deeds and discovered the mistake; an interlineation was also made in the bill of sale at M. O. McSwain's request; that he was in his right mind; that witness did not prepare the papers; that they indicated they were prepared on December 21, 1942; that the certificate shows the acknowledgment to have been taken on August 3rd, but this was error, as he went out there on election day, August 8th; that he was paid $5 for going out there in his truck; that he kept no record; that M. O. McSwain wanted W. C. McSwain to have this property.

The net effect of the testimony of six other witnesses for appellant, nearly all of them members of the family, was that W. C. McSwain virtually reared M. O. McSwain; that M. O. McSwain made his home all his life with W. C. McSwain; that their property was handled as a unit, and that it was accumulated as a result of their

joint efforts and by the work of W. C. McSwain's sons; that for many years M. O. McSwain was disabled and could do no work, during which time he was cared for by W. C. McSwain and his family; that M. O. McSwain often expressed the intention of conveying all his property to W. C. McSwain, and because of a falling out with his sister he did not want her to share in his property; that the signatures to the deed and bill of sale were genuine.

Appellant, in his testimony, detailed the long continued and close relationship between him and M. O. Mc-Swain and described their method of handling all their property together; he testified that M. O. McSwain often said he would deed all his property to appellant and finally, after a dispute with Mrs. Criswell in 1942, when she asked him to pay her board for a short time he had stayed with her, M. O. McSwain had the deed and bill of sale prepared; that it was prepared on December 12, 1942; that he was not at home when Kendall came to take the acknowledgments, but came in before he left; that M. O. McSwain told him about the mistakes in the deed which were corrected by interlineation; that after the papers were signed M. O. McSwain handed the papers to him, telling him they were his; that the signatures were those of M. O. McSwain, and to exemplify same he introduced in evidence a number of bank checks signed by M. O. McSwain; that he did not know why M. O. McSwain did not sign the deed after Morgan prepared it, but he took it home and put it in his trunk; that it was at his brother's request that he did not tell Mrs. Criswell about the papers; that he showed them to her later, and that since then she had them in her possession.

Appellees had the burden to show, by a preponderance of the testimony, that the deed and bill of sale were forgeries. *Blackburn* v. *Cherry,* 87 Ark. 641, 113 S. W. 25; *Staggers* v. *White,* 121 Ark. 328, 181 S. W. 139; *Thompson* v. *Kinard,* 168 Ark. 1057, 272 S. W. 668; *Hildebrand* v. *Graves,* 169 Ark. 210, 275 S. W. 524; *Ledbetter* v. *Smith,* 202 Ark. 144, 149 S. W. 2d 564.

A careful review of the evidence impels the conclusion that appellees have not met this burden. The evi-

dence showed a strong motive for the execution of the papers by M. O. McSwain; and we think that a preponderance of the testimony showed that M. O. McSwain, being of sound mind, did in fact execute the deed and bill of sale. There is no proof on which a finding that he was induced to do so by fraud or undue influence could be based.

It follows that the decree of the lower court must be, and is, reversed and the cause remanded with directions to the lower court to dismiss the complaint for want of equity.