
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–16–400

| | |
|---|---|
| IMODEL J. FRANKLIN and NATHAN B. FRANKLIN<br>APPELLANTS<br><br>V.<br><br>WALDRON NURSING CENTER, INC.; ESTATE OF THURMAN J. FRANKLIN, BY AND THROUGH THE SPECIAL ADMINISTRATOR, DONALD GOODNER; RICHARD D. FRANKLIN; ARGIE N. NICHOLS; and SOUTH PARKS PROPERTIES, LLC<br>APPELLEES | **Opinion Delivered** September 13, 2017<br><br>APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT<br>[NO. 64CV-13-19]<br><br>HONORABLE TERRY SULLIVAN, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

This case returns after we ordered rebriefing.[1] We also realigned the parties to accurately reflect their true positions in this litigation.[2] Imodel Franklin and her son Nathan Franklin separately appeal the Scott County Circuit Court's order finding that Imodel had failed to present sufficient evidence to support the imposition of a constructive trust on certain real property she had conveyed from a family trust to South Parks Properties, LLC. They argue, in common, that the circuit court erred by not imposing a constructive trust

---

[1] *Franklin v. Waldron Nursing Ctr., Inc.*, 2017 Ark. App. 95.

[2] *Id.*

because it was not Imodel's intention to transfer the real property to the limited liability company. They further argue that the deed of conveyance was improperly notarized, and that by transferring the property, Imodel violated her fiduciary duties. In addition to the issues raised with Imodel, Nathan further argues that the court erred in entering a personal judgment against him for the cost of the nursing-home services, contending that the judgment should be in a representative capacity only. He also argues that the court erred in not assessing costs against a party who presented false evidence. We affirm the circuit court's judgment in its entirety.

Imodel Franklin and her husband Thurman (now deceased) had a 400-acre cattle farm. In October 2000, they created a revocable inter vivos trust, intending to pass the farm and all property to their three children upon their deaths. The three children are appellees Dwayne Franklin, Argie Nichols, and appellant Nathan Franklin. The trust instrument provided that during the lifetime of either Thurman or Imodel, either could amend or revoke the trust in whole or in part. There was also a spendthrift provision. Thurman and Imodel were to be the initial trustees, and they could act as trustee independently of each other. The three children were appointed as successor co-trustees. Concurrently with the creation of the trust, Thurman executed a durable power of attorney in favor of Imodel. The children were named as successor co-attorneys-in-fact. Thurman and Imodel conveyed the farm to themselves as trustees shortly after creation of the trust.

In 2011, Thurman became disabled. That same year, prompted by the family CPA who expressed concerns about weaknesses in the trust, the trust was examined by an estate

attorney, Dennis Sbanotto. Sbanotto met with the family, examined the trust documents, and recommended that the trust be converted into an LLC. He prepared the documents to form South Parks Farm, LLC (South Parks or the LLC), and the related deed to convey the property.[3] Imodel executed the documents to form the LLC, including executing a deed transferring the real property to the LLC. The LLC then gave Imodel a life estate to live on the real estate.

In May 2013, Thurman and Imodel filed suit, both individually and as trustees of the family trust, alleging mistake and misrepresentation by the children about the ability of the trust to protect their assets. The children and the LLC were named as defendants. The complaint sought the imposition of a constructive trust. The complaint was later amended several times to include additional theories for setting aside the conveyance to the LLC. Imodel also accused Nichols and Dwayne of converting certain bank accounts to their personal use.

Nathan originally filed a pro se answer admitting the allegations of the complaint and agreeing to the relief sought. He later retained counsel and amended his answer to include a counterclaim against Imodel and a cross-claim against Nichols and Dwayne. In his answer, Nathan denied that he was complicit in having the property conveyed to the LLC, but otherwise agreed that his parents were entitled to the relief they sought. The counterclaim asserted that Imodel lacked authority to use the power of attorney to convey the property. He also asserted that, by using the power of attorney, Imodel was guilty of self-dealing and

---

[3]Nichols, Dwayne, and Nathan were the members of the LLC.

that the conveyance to the LLC should be set aside. For his cross-claim, Nathan asserted that Nichols and Dwayne used forged documents to deprive Thurman, Imodel, and him of their property rights.

Appellee Waldron Nursing Home filed a motion seeking to intervene and to file a third-party complaint. The proposed third-party complaint asserted that Nathan used a power of attorney from Thurman to admit him to the nursing home and sought $25,500 for the balance owed at the time of Thurman's death.[4] The nursing home asserted causes of action for breach of contract, unjust enrichment, promissory estoppel, fraud, fraudulent transfer, and the imposition of a constructive trust to follow Thurman's assets to the LLC. The nursing home sought damages and its attorney's fees. The nursing home later amended its third-party complaint to also assert that the conveyance from the trust to the LLC was void or voidable and sought to set the transaction aside. The circuit court granted the nursing home's motion to intervene.

Imodel answered the nursing home's complaint, denying the material allegations. Nichols, Dwayne, and the LLC also denied the material allegations of the nursing home's complaint. They asserted that the agreement between Thurman, Nathan, and the nursing home occurred after Thurman's assets had been conveyed, first to the trust and then to the LLC. Nathan asserted that the nursing home was entitled to relief against Thurman, Imodel, and the trust, but denied that the nursing home was entitled to relief against him.

---

[4]Thurman died in November 2014.

The attorney for the nursing home also filed a motion to intervene on behalf of Thurman's estate by and through its special administrator, Donald Goodner, alleging that Thurman's assets, and those of the trust, belonged to the estate and should be traced to the LLC. The estate asserted causes of action for unjust enrichment, the imposition of a constructive trust, to set aside a fraudulent transfer, disgorgement of monies paid to the LLC, and damages. The estate's motion to intervene was granted.

A two-day bench trial was held in late October 2015. Following submission of posttrial briefs by the parties, the circuit court issued two letter opinions in which it found that Imodel failed to make a record as to whether the deed conveying the property to the LLC was properly notarized. The court found that neither the plaintiffs nor the other parties had met their burdens of proof to establish a constructive trust over the property transferred to the LLC. The court made a specific credibility finding placing great weight on Imodel's testimony and found that the formation of the LLC was Imodel's idea, that it was properly formed, and that the property and the real estate had been properly transferred. The court also found that no party had met its burden of proof for the imposition of a constructive trust or to argue that the placement of the assets in the LLC was the product of fraud, coercion, mistake, overreaching, or any other argument to invalidate the transfer. The court found that Imodel knew exactly what she was doing when she transferred property to the LLC. The court found that Nathan's ouster from the LLC was not justified and restored him to his full status. Based on Nichols's testimony that she had forged certain documents used to transfer the funds to accounts controlled by her or Dwayne, the court imposed a

constructive trust on the liquid assets in the amount of $65,759.44. By agreement, the court granted Imodel a life estate in the home place on the real property. The court found that the testimony was undisputed that both Nathan and Imodel personally guaranteed that the nursing home's bill of $25,500 would be paid, and entered judgment jointly and severally against them. The nursing home's attorney was awarded an attorney's fee and costs. The court declined to award fees or costs to any other party, finding that all other parties bore some degree of fault. This appeal followed.

Equity cases are reviewed de novo on appeal.[5] This court does not reverse a circuit court's findings of fact unless they are clearly erroneous.[6] Although the imposition of a constructive trust requires clear and convincing evidence of the necessary facts, the test on review is not whether we are convinced that there is clear and convincing evidence to support the circuit court's findings but whether we can say that the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. [7]

We start with the common points argued by Imodel and Nathan. They first contend that the circuit court should have imposed a constructive trust over the real property on the basis of mistake. We disagree.

---

[5]*Tripp v. Miller*, 82 Ark. App. 236, 105 S.W.3d 804 (2003).

[6]*Id.*

[7]*Id.*

Mistake is a recognized ground for the imposition of a constructive trust.[8] However, the asserted mistakes were made by attorney Dennis Sbanotto in the preparation of bills of sale where the LLC conveyed cattle and equipment to Nathan Franklin. They further argue that Sbanotto's testimony contains numerous inconsistencies as to the number of times he met with Imodel and Thurman in preparing the LLC documents. However, these are not the types of mistakes that would justify the circuit court in setting aside the conveyance to the LLC.

Here, Imodel testified that that she made a mistake in transferring the property to the LLC because she did not understand the import of the conveyance or that it was irrevocable. The court found that Imodel knew exactly what she was doing. This is basically a credibility determination for the circuit court.[9] Neither Imodel nor Nathan attacks this finding. We give due deference to the circuit court's superior position in determining witness credibility and the weight to be accorded their testimony.[10]

We cannot say that the circuit court was clearly erroneous in refusing to set aside the conveyance to the LLC and impose a constructive trust.

For their second point, appellants argue that the conveyance from the trust to the LLC was invalid because the deed was improperly notarized. They point to discrepancies in

---

[8]*Druyvestein v. Summit Brokerage Servs., Inc.*, 2010 Ark. App. 500, 375 S.W.3d 777; *Tripp*, *supra*.

[9]*Stokes v. Stokes*, 2016 Ark. 182, 491 S.W.3d 113.

[10]*Hodges v. Gravel Hill Cemetery Comm'n*, 2016 Ark. App. 360, 498 S.W.3d 746.

7

the testimony as to the persons present, including the notary public, at the time Imodel executed the deed. However, this is not an issue because, at trial, Imodel admitted executing the deed. The purpose of a notary public taking an acknowledgment of an instrument is to certify the identity of the person who executed the instrument.[11] Here, that purpose has been met. Moreover, assuming arguendo that the acknowledgement was invalid, the deed would still be valid as between the parties.[12]

Imodel's statement that she executed the deed, along with appellants' interest in the lawsuit, plus several inconsistencies in her testimony, warranted the circuit court in ruling that appellants had not sustained their burden of proof. We cannot say that the circuit court's finding was against the preponderance of the evidence.

Finally, Imodel and Nathan argue that the conveyance is invalid because Imodel violated her fiduciary duty to Thurman and ignored his estate plan and wishes as expressed in the trust instrument.[13]

This point is not preserved for our review. The circuit court did not specifically address the issue of whether Imodel had breached her fiduciary duties in connection with the conveyance to the LLC. Instead, the court found that there was no evidence that the

---

[11]Ark. Code Ann. § 16–47–205 (Repl. 1999); *Jones v. Owen*, 2009 Ark. 505, 342 S.W.3d 265.

[12]*Hickerson v. Lyon*, 229 Ark. 24, 312 S.W.2d 930 (1958); *McSwain v. Criswell*, 213 Ark. 775, 213 S.W.2d 383 (1948).

[13]Although both Imodel and Nathan argue this point, we have concerns about whether Imodel has standing to raise this issue due to the fact that Thurman's estate was made a party to this action but did not file a notice of appeal. Nevertheless, we will address the issue because Nathan, a beneficiary of the trust, undoubtedly has standing to do so.

conveyance was "the product of fraud, coercion, mistake, overreaching, or that there was any other argument that could invalidate the transfer."

An appellant has the burden to obtain a ruling on an issue in order to preserve the issue for appeal.[14] In the absence of a ruling, the appellate court will not reach the issue; nor will it presume a ruling from the circuit court's silence.[15] Applying these principles, our courts have held that, when a circuit court's order specifies a particular ground for the court's decision, that ground alone is subject to our review.[16] Other arguments that the appellant raised below, but did not obtain a ruling on, are not preserved for appeal, and we are precluded from addressing them.[17]

We turn now to Nathan's separate points. Nathan first argues that the circuit court erred in entering a personal judgment against him. The circuit court found that both Imodel and Nathan had personally guaranteed that the nursing home's bill of $25,500 would be paid. The court entered judgment jointly and severally against them in the amount of $25,500, together with postjudgment interest. Imodel does not argue this issue on appeal. Nathan argues that the evidence shows that he obligated himself in a representative capacity.

---

[14]*Ark. Lottery Comm'n v. Alpha Mktg.*, 2012 Ark. 23, 386 S.W.3d 400.

[15]*Id.*

[16]*See Tillman v. Raytheon Co.*, 2013 Ark. 474, 430 S.W.3d 698; *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, 427 S.W.3d 651; *Hurst v. Ark. Radiology Affiliates, P.A.*, 2015 Ark. App. 333.

[17]*Tillman*, *supra*; *TEMCO*, *supra*; *Hurst*, *supra*.

The nursing home concedes that Nathan signed the admission papers in a representative capacity, but argues that a novation occurred whereby Nathan obligated himself on the payments.

Fred Watts, the operating officer of the nursing home, testified that Thurman Franklin resided at the home before his death and that he died owing the nursing home $25,500. Watts further testified that Nathan Franklin assured him that the nursing home would get paid, but that the money was in a trust or an LLC. Watts testified that Nathan signed the obligation in a representative capacity based on a power of attorney from Thurman. On questioning by the court, Watts said that Nathan never personally guaranteed that he would pay the bill out of his own pocket, just that he would see to it that the nursing home was paid.

Nathan testified that he told Watts that he "would make good on my father's bill." He had used a power of attorney to admit his father to the nursing home. He also testified that he told Watts that the nursing home would get paid one way or another. His testimony was that he did not necessarily say that payment would come out of his pocket, but also that he never said that it was not to come out of his pocket.

Nathan's argument ignores his own testimony, as well as the ambiguity in his promise that the nursing home would be paid. As outlined above, his own testimony was unclear as to whether payment would come from his own pocket or some other source. When there are two permissible views of the evidence, the fact-finder's choice between them cannot be

clearly erroneous.[18]

Finally, Nathan argues that the circuit court erred in failing to assess costs against Nichols on Nathan's cross-claim against Nichols and Dwayne for his ouster from the LLC. Nathan contends that fees and costs are warranted because Nichols admitted forging documents related to his ouster. Ultimately, the circuit court restored Nathan to membership. Although the court awarded attorney's fees and costs to the nursing home, it declined to award attorney's fees or costs to any other party after concluding that all other parties bore some degree of fault in this matter.

Arkansas follows the American rule, which requires every litigant to bear his or her attorney's fees absent statutory authority or a contractual agreement between the parties.[19] Nathan has not cited our attorney's-fee statute,[20] nor has he offered any Arkansas case law on the question whether fees may be allowed under these circumstances. In *Stokes*, the supreme court held that we must look to the pleadings to determine the nature of a claim and to decide whether the claim sufficiently concerns a breach of a contract. Here, Nathan's cross-claim sounds in tort for fraud in creating false and forged documents to oust him from the LLC. There are no allegations of a breach of contract. The statute does not, however, permit an award of attorney's fees in a tort case.[21]

---

[18]*Rymor Builders, Inc. v. Tanglewood Plumbing Co.*, 100 Ark. App. 141, 265 S.W.3d 151 (2007).

[19]*Stokes*, supra.

[20]Ark. Code Ann. § 16-22-308 (Repl. 1999).

[21]*Barringer v. Hall*, 89 Ark. App. 293, 202 S.W.3d 568 (2005).

SLIP OPINION

Because Nathan offered no statutory authority for awarding attorney's fees, and such an award would be contrary to the general rule against awarding such fees in the absence of a statute or rule, we affirm the circuit court's denial of the attorney's fees.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Walters, Gaston, Allison & Parker*, by: *Troy Gaston*, for appellant Imodel Franklin.

*Joel W. Price*, for appellant Nathan Franklin.

*The Jesse Law Firm, P.L.C.*, by: *Mark Alan Jesse*, for appellees Richard D. Franklin, Argie Nichols, and South Parks Properties, LLC.

*Weimar Law Office*, by: *DeeAnna Weimar*, for appellee Waldron Nursing Center, Inc.