## COULTER v. CLEMONS.

5-3024

372 S. W. 2d 396

Opinion delivered November 18, 1963.

*Gentry & Gentry*, for appellant.

*L. B. Smead* and *L. Weems Trussell*, for appellee.

ED. F. McFADDIN, Associate Justice. This is a suit to quiet title brought by the appellants, Murray Whitfield Coulter and George Prothro Coulter, against the appel-

lees, Julia Clemons *et al.* Other parties were added by cross complaint and third party procedures. The appellants claimed title to the real estate here involved by mesne conveyances from those who owned the lands prior to the 1932 tax sale for the 1931 taxes. The appellees claimed by statutory possession acquired under the deed issued because of such tax sale. The decree of the Chancery Court in favor of the appellees was reached largely because of the finding that the appellants were claiming under a forged deed; and that issue of forgery becomes the most important point on this appeal.

Before discussing the forgery matter, however, we give other background information. The appellants, in seeking to quiet their title, claimed: (a) that the lands here involved were originally owned by Harris Brothers, who became bankrupt in 1931; (b) that the 1932 tax sale was void for failure of the Clerk to affix his certificate before the date of sale; (c) that there was no valid statute curing such defect;[1] (d) that the trustee in bankruptcy conveyed the lands to E. W. Prothro in 1933; (e) that E. W. Prothro conveyed the lands to the appellants in 1933; and (f) that the appellants were minors in 1933 and within proper time brought this suit—not to redeem the lands from taxes but—to quiet their title to the lands under the claim that their predecessors in title were the owners of the lands.

The appellees claim under a deed from the State Land Commissioner in 1935, the lands having forfeited to the State in 1932 for the delinquent taxes of 1931; and appellees claim: (a) that, regardless of the validity of the tax sale, the appellees under the tax deed have paid taxes on the lands (admitted to be wild and unimproved) for more than fifteen years; (b) that such payments make good title; (c) that the deed from E. W. Prothro to the appellants is a forgery; and (d) that the appellants have no title to the lands and therefore cannot maintain this suit.

---

[1] On this point see *Coulter* v. *Anthony*, 228 Ark. 192, 308 S. W. 2d 445, which case is discussed on another point in Topic II, *infra.*

The alleged deed from E. W. Prothro to appellants was dated August 28, 1933, and recorded August 3, 1940 —A lapse of almost seven years between date of execution and date of recordation. At the time of the date of the deed the appellants were children, aged one and three years respectively, and were nephews of E. W. Prothro. The appellants brought this suit within the permissible time after arriving at full age. The suit was filed on April 16, 1952, and remained untried until 1962 because of other litigation later to be mentioned. Trial in the Chancery Court in 1962 resulted in a holding that the deed from E. W. Prothro to the appellants was a forgery; and this appeal challenges the correctness of that holding. The appellants raise three points:

"1. The Court erred in holding that the deed of E. W. Prothro, dated August 28, 1933, conveying the lands to appellants, was a forgery and that by reason thereof appellants had no title to the lands involved.

"2. The testimony of E. W. Prothro in the form of a deposition introduced as evidence by appellees is binding upon them, and the court erred in not so holding.

"3. The Court erred in holding that appellants had not shown title in themselves and in dismissing appellants' complaint for want of equity."

1. *Forgery.* It was established that the Trustee in Bankruptcy of Harris Brothers executed a deed dated August 17, 1933, conveying the land here involved to E. W. Prothro; that the deed was actually delivered on August 23, 1933 to E. H. Coulter, Sr., a brother-in-law of E. W. Prothro, and the deed was recorded the same day delivered; that E. H. Coulter, Sr. is the father of the appellants, Murray Whitfield Coulter and George Prothro Coulter; that E. H. Coulter, Sr. was an attorney and had represented E. W. Prothro previously; that the challenged deed here involved was dated August 28, 1933 but was not recorded until August 3, 1940, a lapse of almost seven years; and that the challenged deed here involved purported to have been acknowledged by E. W. Prothro before T. P. Oliver, a Notary Public.

T. P. Oliver testified that he never signed the said acknowledgment on the deed and that his signature thereon was a forgery. Furthermore, Mrs. T. P. Oliver, the wife of T. P. Oliver, testified that she was the chief operator for the Southwestern Bell Telephone Company in El Dorado; that she and T. P. Oliver had been married 32 years; that she was well familiar with the signature of T. P. Oliver; and that the signature of T. P. Oliver on the acknowledgment of the questioned deed was not the signature of T. P. Oliver. The Olivers were entirely disinterested witnesses.

Other instruments admittedly signed by E. W. Prothro were introduced in evidence in order to establish his genuine signature. Some of these were: (a) a deed from E. W. Prothro to O. E. McGugan, dated January 1, 1934; and (b) a deed from E. W. Prothro to Lionel Robertson, dated January 23, 1934. Thus, contemporaneous instruments were in evidence containing the admittedly genuine signature of E. W. Prothro. Then C. W. Talbot, President of the First National Bank of Fordyce, and with 43 years experience in handwriting, testified that the purported signature of E. W. Prothro on the questioned deed (that is, from E. W. Prothro to Murray Whitfield Coulter and George Prothro Coulter) was not written by the same person who had signed the McGugan and the Robertson deeds, as previously set forth. Here is Mr. Talbot's positive testimony on the point as abstracted by the appellants:

"I am now handed a photostatic copy of a deed purporting to have been executed by E. W. Prothro to George Prothro Coulter and Murray Whitfield Coulter, dated August 28, 1933, and filed for record in Calhoun County on August 3, 1940, which deed I have examined previously and it is my opinion, based upon my experience since 1920, and from a careful examination of these deeds that the signature of E. W. Prothro on the deed to George Prothro Coulter and Murray Whitfield Coulter is not the same handwriting as the signature of E. W. Prothro on the McGugan and Robertson deeds."

Other admittedly genuine signatures of E. W. Pro-
thro were in evidence: one was his signature on a deed
from Prothro to Johnson Brothers in August 1933; and
the other was a signature of Prothro on an indemnity
bond executed at the same time, which indemnity bond
was signed by E. W. Prothro as principal, and E. H.
Coulter as surety. The Chancery Court compared Pro-
thro's signature on the deed here in question, as against
the admitted signatures in the Johnson transaction. The
only evidence against the forgery was that of E. W. Pro-
thro,[2] which came into the record in the manner discussed
in Topic II, *infra*. E. W. Prothro testified that he signed
the deed to the appellants on the date shown and deliv-
ered the deed to his sister, who was the mother of the
appellants; that the appellants were small children at the
time; and the deed was a gift to them.

The appellees had the burden of proving the forgery
by a preponderance of the evidence. *Thompson* v. *Kinard*,
168 Ark. 1057, 272 S. W. 668; *Hildebrand* v. *Graves*, 169
Ark. 210, 275 S. W. 524; *Ledbetter* v. *Smith*, 202 Ark.
144, 149 S. W. 2d 564. Did the testimony of E. W. Pro-
thro outweigh the testimony of Mr. and Mrs. Oliver and
C. L. Talbot, and the admittedly genuine signatures as
against the questioned signature? The thought and study
which the learned Chancellor gave to this question of
forgery and to the entire case is exemplified by the opin-
ion which he delivered and which is in the transcript.
On the evidence as we have outlined it—and the record
contains no other for the appellants—the Chancery Court
concluded that the alleged deed from E. W. Prothro to
the appellants was a forgery; and we cannot say that
such finding is contrary to the preponderance of the evi-
dence. Therefore, we affirm the finding that the deed

---

[2] The fact that E. W. Prothro testified that he signed the deed
does not completely foreclose the appellees on this issue of forgery,
because his testimony is the same as that of any other party in the
case. We can easily imagine a situation wherein a son was charged
with forging his father's name to a check. The testimony of the father
—to the effect that he had signed the check himself—would not con-
clusively establish that there had been no forgery. In 23 Am. Jur. p.
679, "Forgery" § 8, there is a discussion of forgery by the use of one's
own name with intent to deceive; and there are annotations on this
point in 41 A.L.R. 229, 46 A.L.R. 1522, and 51 A.L.R. 568.

from E. W. Prothro to the appellants was a forgery, and that the appellants are without title.

II. *The Testimony Of E. W. Prothro As Binding On Appellees.* The appellants insist that the appellees brought into the trial of this case the testimony of E. W. Prothro and are, therefore, bound by his testimony to the effect that he signed the questioned deed to the appellants. The answer to this contention necessitates a mention of previous litigation between these appellants. We have reference to the case of *Coulter v. Anthony,*[3] 228 Ark. 192, 308 S. W. 2d 445, decided by us on November 4, 1957, and *certiorari* denied by the Supreme Court of the United States on November 17, 1958, 358 U. S. 73; 3 L. Ed. (U.S.) 118; 79 S. Ct. 153. The said Coulter-Anthony case (involving the same tax sale as here) was No. 1557 in the Calhoun Chancery Court; and E. W. Prothro was a party defendant, being brought in by cross complaint just as in the present case. He gave a deposition in answer to interrogatories propounded to him by the opposite side (just as here), and his deposition was offered in that case under Sub-section (d) of Section 1 of the Discovery Statutes of 1953.

The present case in the Calhoun Chancery Court was No. 1559; and by agreement, the deposition of E. W. Prothro in Case No. 1557 was used by the present appellees, since Prothro was a party adverse to them in this case. Here is what transpired in the Lower Court when the deposition of E. W. Prothro was offered:

"L. WEEMS TRUSSELL: If the Court please, at this time I would like to offer in evidence the Interrogatories propounded to Dr. Ernest Prothro, who was an adverse party in Case No. 1557 and who was made an adverse party in this Case No. 1559. This instrument is now offered by the defendants without being bound by the testimony of E. W. Prothro, who is an adverse party, and is offered under Section 1, Act 335 of 1953. . . .

---

[3] There is another case by these appellants, styled *Coulter* v. *O'Kelly,* 226 Ark. 836, 296 S. W. 2d 753, but it has no direct bearing on the present litigation.

"U. A. GENTRY: We would like to interpose our objections to the introduction of these two depositions or the testimony given by these two witnesses found in the record of *Coulter* v. *Anthony,* Case No. 1557, not because it is testimony given in that case but because it is evidence that goes to fraud, or an undertaking to prove some fraud on the Bankruptcy Court or by Officers of the Bankruptcy Court in acquiring this property that is in litigation today. That has nothing to do with this case. . . ."

Later, and just before the close of all the testimony, the following occurred:

"MR. GENTRY: If the Court please, Mr. Trussell has offered all the rebuttal testimony I wanted to offer in the deposition of Dr. Prothro. We would make that our testimony.

"MR. TRUSSELL: Since I have offered it, do you agree that I am offering it as an adverse party or do you prefer to offer it?

"MR. GENTRY: We want it in the record, after they introduced their testimony about the validity of the deed.

"MR. TRUSSELL: Very well, your Honor, that is all.

"MR. GENTRY: That is all we have."

We have copied the pertinent excerpts from the proceedings of this trial to show just how the deposition of E. W. Prothro came into the record, and to establish that it was offered by the appellees as the testimony of an adverse party. Act No. 335 of 1953 (now found in Ark. Stat. Ann. § 28-348 *et seq.* [Repl. 1962]) provides that the introduction of a deposition of a person makes such deponent the witness of the person introducing the deposition ". . . but this shall not apply to the use by an adverse party of his deposition. . . ." Therefore, the appellees had the right to offer the deposition of E. W. Prothro without being bound by his answers. The appellees so stated when they offered the deposition, and

234

the appellants did not make any claim in the Trial Court that the appellees would be bound by the answers of Prothro. We find no merit in the claim of the appellants that the appellees were bound by the testimony of E. W. Prothro.

III. *The Appellants Claim That Their Title Should Be Quieted.* This point was practically eliminated when we affirmed—in Point I, *supra*—the Chancery finding that the appellants were claiming under a forged deed. A forged deed does not pass title. *Bird* v. *Jones,* 37 Ark. 195; *Wilson* v. *Biles,* 171 Ark. 912, 287 S. W. 373; *McCarley* v. *Carter,* 187 Ark. 282, 59 S. W. 2d 596. Therefore, with the deed from E. W. Prothro to appellants held to be a forgery, the appellants have shown no title in themselves. From 1935 to the trial of this cause the appellees, under color of title, had paid the taxes on the lands, admitted to be wild and unimproved (Ark. Stat. Ann. § 37-102 [Repl. 1962]); so the appellants had no title to be quieted.

The decree is affirmed.