CHARLIE DAVIDSON *v.* HARRIET BELL

5-5041                                         447 S. W. 2d 338

Opinion delivered December 1, 1969

*F. C. Harrelson,* for appellant.

*Proctor & Proctor,* for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal from a decree of the court setting aside a deed allegedly given by P. J. Bell (sometimes referred to as Phillip Bell) and Harriet Bell, his wife, to Charlie Davidson and wife. Bell, purportedly 102 years of age at the time of his death, was the owner of certain lands, approximately 50 acres, in St. Francis County, Arkansas, which Charlie Davidson and wife, appellants herein, contend were deeded to them on October 7, 1967. Evidence offered by the appellants through the testimony of Charlie Davidson, Marie Morrison and Bill Baskin was to the effect that Davidson went into Taylor Motor Company at Forrest City, and asked Mrs. Marie Morrison, who worked in the office of the motor company, to notarize a deed. He then brought P. J. Bell to the window, and Mrs. Morrison, after asking for identification,[1] presented the deed for Bell to sign. Upon being advised that Bell's wife, Harriet, could not sign her name, Bill Baskin, also an employee of the motor company, was called in for the purpose of witnessing Mrs. Bell's mark. Both Baskin[2] and Mrs. Morrison testified that Harriet Bell made her mark on the deed, and both testified that the person identified as P. J. Bell signed the instrument. Neither witness saw Davidson give either

[1] The testimony does not reflect what Bell offered as identification.

[2] Baskin later testified that he subsequently went to the home of Harriet Bell to ascertain if she were the same person that placed her mark on the deed. He testified that she was the woman who was present on the morning of the signing at the motor company, and who joined in the conveyance by making her mark.

of the Bells any money. Charlie Davidson, who had leased the lands in controversy from Bell for 15 or 16 years, testified that he paid cash, obtaining $2,300.00 on August 14,[3] and he also said that he agreed to give the Bells rent as long as they lived, amounting to $150.00 per year. Admittedly, he did not pay anything to the Bells at the time he received the deed, testifying that when he paid them, only the three (Davidson and the Bells) were present.

Sherman W. Baker, according to his testimony, a nephew of P. J. Bell, testified that he was at the home of the Bells on the day the purported deed was executed. Baker said that he went to the house before day, intending to go hunting; however, instead of going hunting, he stayed at the house all day, from 4:00 A.M. to 9:30 P.M. The witness said that neither Bell nor his wife left the house during that period of time. Jerry Harvey Shaw testified that he went with Sherman Baker to the Bell residence, this witness stating that they arrived about 5:00 A.M. He said that he stayed about 15 minutes, and then went squirrel hunting, and that he returned to get Baker about 9:00 P.M.

Danner Cooper testified that he went to the home of Bell on the aforementioned date, and stayed all day, until 9:00 or 9:15 P.M. He confirmed that Baker was at the house during the same period, and he also testified that neither of the Bells left at any time:

''Mrs. Bell was real low sick, and Mr. Bell said he had been up all night. Something he had eaten tore his stomach up.''

Earl Davenport, a handwriting expert of Memphis,

---

[3]Davidson stated that this $2,300.00 was obtained by cashing a check at the bank given to him by a third party, and in the amount of $4,939.12. He said he paid off a note in the amount of $2,439.12, leaving a balance of $2,500.00. The witness further testified that he left $200.00 on deposit, but never did say where he obtained the $200.00 to add to the $2,300.00, purportedly given for execution of the deed.

testified on behalf of appellee. This witness was of the opinion that the signature of Phillip Bell on the deed to Davidson was not made by the same person who had signed other exhibits offered, these last having admittedly been signed by Phillip or P. J. Bell. Davenport went into a great deal of detail in explaining to the court how he had reached his conclusions.

We have often commented, so often as to need no citation of authority, that the Chancellor is in a much better position to determine fact questions than this court, inasmuch as he sees and hears the witnesses testify, and observes their demeanor on the witness stand. Here, on the one hand, we have testimony that Bell and his wife executed a deed to Davidson and wife on October 7, 1967; on the other hand, we have two witnesses who testified that neither Bell nor his wife left their home at any time during the day on that date, and another witness, to an extent, corroborated this evidence. We certainly are not in a position to say which witnesses were correct, or whether Mrs. Morrison and Mr. Baskin were mistaken in their identification.

The other facts, however, lend support to the Chancellor's findings. From the record, it appears that the court paid close attention to the rather lengthy testimony of the hand-writing expert. It also seems a little unusual that Davidson received $2,300.00 in cash on August 14, but did not use it to pay Bell for a considerably long periol of time, if we remember that the deed was not allegedly executed for nearly two months. When asked if he carried the money around in his pocket, this appellant replied, "No, sir. I didn't carry it in my pocket. I had a place to put it." He never explained further. Nor did he ever say when or where he gave Bell this cash money.

Appellant says that, though Davidson received the deed on October 7, Bell made no attempt to have it cancelled before his death (which occurred on February

23, 1968). Of course, it is the contention of appellee that no deed was given at all; that it was simply a forgery, and that Harriet Bell knew nothing about the deed until it was placed of record. Actually, this circumstance is very pertinent to the litigation, for Davidson did not record his deed until March 20, 1968, 24 *days after the death of Bell*. Davidson's stated reason for this undue delay is reflected in the record:

"Q. Mr. Davidson, tell this Court now why that deed wasn't recorded.

A. (No audible response)

Q. Go ahead. Just because he gets a welfare check—

A. Well, I guess that's what it really was. He said he'd have his checks cut out."

This was simply another question of fact for the Chancellor to decide.

Appellant asserts that the court erred in finding that appellee was present in person on the date of hearing. We find no significance in this fact, nor is any authority cited to the effect that error was committed. Harriet Bell, said to be 98 years of age, was apparently unable, because of ill health, to attend the hearing, and it had already been necessary for one of appellant's witnesses (Baskin), sometime prior to the trial, to go to the Bell home in order to make an identification of Mrs. Bell. We know of no law that requires a party litigant, in litigation involving the setting aside of a deed, to be present.

It is also asserted that the court erred in decreeing that Harriet Bell is the owner of the lands involved. Since the record reflects that the property had been deeded to P. J. Bell, alone, rather than to P. J. and

Harriet, as husband and wife, thus creating an estate by the entirety, it does appear that appellee only held a dower and homestead interest. However, that fact does not give appellant cause for complaint; certainly, Mrs. Bell had a sufficient interest in the property to bring suit to set aside the deed, and, after all, this litigation only determines Mrs. Bell's rights as against appellants. If there are third parties somewhere who claim an interest in the lands, their right to assert their ownership has not been affected by this litigation.

This is not a case where it is contended that a deed was obtained by duress or fraud: under those circumstances, the law requires that the proof be clear, cogent and convincing before the deed can be set aside. Here, it is simply asserted by appellee that the deed was a forgery, and the quantum of proof necessary to sustain such an allegation is a preponderance of the evidence. *Coulter* v. *Clemons,* 237 Ark. 227, 372 S. W. 2d 396. We are unable to say that the Chancellor's findings were clearly against the preponderance of the evidence.

Affirmed.