Paul MILLWEE, Executor *v.* Charles R.
WILBURN et ux

CA 82-61                                      640 S.W.2d 813

Court of Appeals of Arkansas
Opinion delivered October 27, 1982

*Smith, Stroud, McClerkin, Dunn & Nutter,* for appellant.

*Pilkinton & Pilkinton,* for appellees.

Tom Glaze, Judge. Appellant filed a suit to cancel a deed and bill of sale executed by the deceased, Ms. Homa McClinton, to the appellees, Charles Wilburn and Leona Wilburn, his wife. The bases of the suit included allegations of Ms. McClinton's mental incapacity, undue influence and overreaching by Charles Wilburn and inadequate consideration paid by appellees. The chancellor dismissed appellant's complaint for want of equity. The primary issue on appeal is whether the chancellor's findings are clearly against the preponderance of the evidence. We find they are not and affirm.

Charles Wilburn was the nephew of Ms. McClinton. Ms. McClinton was a strong-willed woman who lived 89 years. At different periods, Wilburn assisted his aunt in her personal and business affairs. For instance, he looked after her from 1963 until 1973, at which time she became angry with him. At Ms. McClinton's urging, Wilburn resumed assisting her in May, 1979, and continued until she died on November 21, 1979. On May 25, 1979, Ms. McClinton executed a deed and bill of sale in Wilburn's favor. It is this deed that appellant, the executor of Ms. McClinton's estate, seeks to set aside.

## I. MENTAL CAPACITY

In *Pledger* v. *Birkhead,* 156 Ark. 443, 455, 246 S.W. 510, 515 (1923), the Supreme Court stated the following test of mental competency to execute a deed:

> If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument.

Appellant had the burden to show that Ms. McClinton lacked the mental capacity to execute the May 25 deed by a clear preponderance of the evidence. *Watson* v. *Alford,* 255 Ark. 911, 503 S.W.2d 897 (1974). Like the trial court, we believe appellant failed to meet that burden. In fact, one of appellant's witnesses was an attorney who drew a will for Ms. McClinton three months after she executed the deed. He testified that she was in good physical and mental condition and that "she had a very bright mind." The attorney also related that he recalled her reciting poetry at length from memory and that she was "totally competent at that point." Another witness, Gordon Broome, stated that he read the deed to Ms. McClinton and asked if it was her desire to convey her property. Broome testified that she said it was, and he then signed and notarized a Bill of Sale. A third witness, Dr. J. S. Andrews (a neuropsychiatrist) testified by deposition. Andrews had examined Ms. McClinton on May 24, 1979, and his opinion was that she would have understood that she conveyed her property by signing and delivering the May 25 deed. The county sheriff, Marlin Surber, testified that he saw Ms. McClinton in the hospital shortly before her death. He said, "I thought she was comparatively as sharp as she ever was. . . . In characterizing her business wise, I would think that she took care of her business pretty well." We conclude that the evidence strongly supports the trial court's holding that Ms. McClinton possessed the required mental capacity when she executed the deed.

## II. FRAUD OR UNDUE INFLUENCE

When it is contended that a deed was obtained by duress or fraud, the law requires that the proof be clear, cogent and convincing before the deed can be set aside. *Davidson* v. *Bell,* 247 Ark. 705, 710, 447 S.W.2d 338, 340 (1969). *See also Baker* v. *Helms,* 244 Ark. 29, 423 S.W.2d 540 (1968) (especially when fraud is alleged, evidence must be clear, strong and conclusive, or clear, cogent and convincing, or clear, unequivocal and decisive). Here, the trial court rejected appellant's contention of undue influence, and found that Ms. McClinton was a very strong-willed person, not the type who would by any means be a victim of undue influence, overreaching or fraud. We believe there is sufficient evidence to support the trial court's finding.

John Hainen, an attorney who had assisted Ms. McClinton in years past, testified that she was "very strong-willed" and "[s]he had seen the world pretty rough, and she was able to face it." In fact, the evidence reflects that she exercised a great deal of independence from others, including Mr. Hainen and her nephew. Ms. McClinton initially became upset with her nephew, Wilburn, in 1973, after he had cared for her personal and business affairs for ten years. She then looked after her own affairs until 1979. However, she engaged her attorney, Mr. Hainen, to assist her by placing his signature on her bank accounts. In 1979, while she was residing in the DeQueen Nursing Home, she apparently became upset with Mr. Hainen and removed his name from her bank accounts. She called Wilburn for help and told him she wanted to leave the nursing home. However, before any arrangements were made, she became ill and was hospitalized. While in the hospital, she signed the deed conveying her property to Wilburn and tore up a will that had been prepared previously by Mr. Hainen. After being dismissed from the hospital, she moved into the Four States Nursing Home in Texarkana, Texas. She became disenchanted with her stay in this nursing home and informed a visiting friend, Mr. Paul Millwee, that she needed his help. She advised Millwee that she did not want Wilburn to receive anything, evidencing her anger against Wilburn once again.

From the foregoing evidence, the trial court concluded that Ms. McClinton frequently changed her mind and attempted to play one person against another in an effort to get her way. We believe such a conclusion fairly could be reached by the court in view of the evidence presented. On the other hand, we fail to see how such evidence could in any way show that Ms. McClinton was unduly influenced or overreached when she deeded her property to Wilburn. The proof shows that the deed was prepared and executed at the insistence of Ms. McClinton. Mr. Broome, the notary, assured himself that she knew what she was doing when she executed the deed and that it was her desire to convey the property to Wilburn. In sum, Ms. McClinton was in no way dominated by anyone. The record reflects she was a strong-willed, mentally competent person who normally prevailed on others to conduct many of her personal and business affairs. On these facts, we are unable to say the court erred in finding that Ms. McClinton was not unduly influenced in the execution of the May 25 deed to Wilburn.

## III. INSUFFICIENT CONSIDERATION

The owner of property who is *compos mentis* has absolute dominion over his property and may dispose of it as he sees fit, so long as he does not interfere with the existing rights of others. Absent fraud, accident or mistake, no one can question another's disposition of his own property. *O'Connor* v. *Patton,* 171 Ark. 626, 640, 286 S.W. 822, 827 (1926). When a conveyance is voluntary and absolute on its face, then the question of consideration is immaterial. *Id.; see also Szklaruk* v. *Szklaruk,* 251 Ark. 599, 608, 473 S.W.2d 853, 858 (1971) (chancellor's holding that question of consideration for deed immaterial held not against preponderance of evidence). Inadequacy of consideration does not afford grounds for setting aside a voluntary conveyance. *Leake* v. *Garrett,* 167 Ark. 415, 420, 268 S.W. 608, 609 (1925).

In the deed which Ms. McClinton executed, the recited consideration was as follows:

Services and expenses already performed and incurred, Love and Affection and Ten and No/100 ($10.00)

Dollars, paid by Charles R. Wilburn and Leone V. Wilburn, his wife.

At the time the deed was executed, Ms. McClinton was also presented with a letter in which Mr. Wilburn promised to care for his aunt in the future. The testimony of Mr. Wilburn and others indicated that he had performed numerous acts for his aunt both before and after the deed was executed. He testified that he intended to pay expenses for nursing home maintenance for his aunt if and when Ms. McClinton's own funds were depleted.

Support deeds are unquestionably valid in Arkansas. *Wood* v. *Swift,* 244 Ark. 929, 940, 428 S.W.2d 77, 82 (1968). When consideration for a deed is a promise to support, then a grantee's intentional failure to support is grounds for a grantor or his executor to bring an action to cancel the deed for failure of consideration. The basis of such action is that the grantee's intent was fraudulent from the outset; the deed was literally *without* consideration because the grantee presumably never intended to support. *Id.*

The facts at bar do not show that Mr. Wilburn failed to carry out his part of the bargain either intentionally or otherwise. The testimony indicated that he was solicitous of his aunt's needs and wishes during her stay at the Four States Nursing Home. In fact, the periods during which Mr. Wilburn did not see to his aunt's needs, specifically 1973 to 1979, were at her instance. During that time, she relied upon Mr. Hainen and others to help her handle her business affairs.

We cannot say that the trial court's finding that adequate consideration existed for the conveyance from Ms. McClinton to Mr. Wilburn was against the preponderance of the evidence.

## IV. THE TAPE RECORDING

The appellant alleged that the chancellor erred in refusing to admit at trial a tape recording of Ms. McClinton's statement to Sheriff Marlin Surber made on the

morning before her death. The appellant contends that the recording should have been admitted under Rule 803 (3) of the Uniform Rules of Evidence to show Ms. McClinton's then existing state of mind with regard to her transferring her property to Mr. Wilburn. The tape recording was made six months after the conveyance to Mr. Wilburn. Sheriff Surber himself testified to virtually the same facts as are contained on the tape.

Ms. McClinton's state of mind at the time of her death is not at issue in this case. Rather, her state of mind at the time she executed and delivered a deed to Mr. Wilburn is important. The chancellor's decision not to admit the tape is within his sound discretion, and we cannot find that his exercise of that discretion was erroneous.

Affirmed.