John H. DYSON and Sybil J. DYSON v. FERNCLIFF
PROPERTIES, INC.

CA 85-66                                      696 S.W.2d 767

Court of Appeals of Arkansas
Division II
Opinion delivered October 2, 1985
[Rehearing denied October 30, 1985.]

*Homer Tanner*, for appellants.

*Gruber Law Office*, by: *Rita W. Gruber*, for appellee.

TOM GLAZE, Judge. This appeal ensues from appellants' unsuccessful action to cancel a deed. Appellants contend the trial court erred (1) in finding that they failed to present sufficient evidence that their signatures on the deed were forged, (2) in correcting the property description in the disputed deed, and (3) in not sequestering a witness from the courtroom.

The appellants owned a tract in Sherwood upon which they built a house. They later sold their son and daughter-in-law a portion of the tract and, on 19 August 1980, sold the remainder of the tract, including their house, to Ray Wolf Company, Inc. (Wolf Company). Wolf Company paid the appellants $125,000 in cash and gave them a $50,000 or $55,000 promissory note for

the balance of the purchase price. The note was secured by a second mortgage that described only that part of the tract upon which the house was located. The Citizens National Bank at Jacksonville held a first mortgage on the same portion to secure the $125,000 it loaned Wolf Company for the purchase of the entire tract. The remaining, unencumbered, portion of the tract sold Wolf Company is the focus of this litigation.

This controversy evolved from two deeds prepared in Judge Milas Hale's office. Both deeds were dated 20 August 1981. One deed transferred title to the unencumbered property from Wolf Company to appellants; the second deed, containing the alleged forgeries, conveyed the same property from the appellants to Ferncliff, Inc. (Ferncliff).[1] At this point, we note that Ray Wolf was president of Wolf Company and secretary/treasurer of Ferncliff. While appellants and Ray Wolf agree that the first deed was prepared and executed, they are in total disagreement concerning the second. It is undisputed that appellant John Dyson took the first deed to his attorney, who corrected the property description. That correction deed was executed by Ray Wolf on behalf of the Wolf Company on 28 August 1981 and recorded on 17 September 1981. The second or alleged forged deed, dated 20 August 1981, was not recorded until 27 January 1982. John Dyson testified that he first discovered the disputed deed when he checked his property taxes in March 1983. He and his wife, Sybil, promptly filed this suit to set the deed aside.

The parties agree that appellants had the burden of proving that their signatures on the Ferncliff deed were forged. They disagree, however, on the quantum of proof required. Appellants contend the forgery need only be established by a preponderance of the evidence, while appellee asserts the proof must be clear and convincing. On this point, we hold appellants are correct.

In determining the required degree of proof, the cases distinguish between when it is contended there has been fraud or duress in obtaining a deed, and when forgery is alleged. As the court clearly stated in *Davidson v. Bell*, 247 Ark. 705, 710, 447

---

[1]   The trial court found that Ferncliff, Inc. was actually Ferncliff Properties, Inc. and reformed the deed to reflect this correction.

S.W.2d 338, 340 (1969):

> [w]here it is contended that a deed was obtained by duress or fraud . . . the law requires that the proof be clear, cogent and convincing before the deed can be set aside. Here, it is simply asserted . . . that the deed was a forgery, and the quantum of proof necessary to sustain such an allegation is a preponderance of the evidence. *Coulter* v. *Clemons*, 237 Ark. 227, 372 S.W.2d 396 (1963).

*See also McCarty* v. *Blaylock*, 248 Ark. 645, 648, 453 S.W.2d 35, 37 (1970) (deed found not to be a forgery where "proof heavily preponderates" in favor of party claiming not a forgery); *Kennedy* v. *Couillard*, 237 Ark. 353, 372 S.W.2d 825 (1963) (party did not sustain burden of proving, by a preponderance of the evidence, that her signature on a deed was a forgery); *Temple, Adm'r* v. *Smith, et al.*, 222 Ark. 834, 262 S.W.2d 898 (1953) (burden on party to prove forgery of deed by a preponderance of the evidence); *Fuller* v. *Norwood*, 267 Ark. 900, 592 S.W.2d 452 (Ark. App. 1979) (parties alleging forgery of signatures on contract must sustain burden of proof by a preponderance of the evidence).

■ Although the appellants' burden here was to show the forgeries by a preponderance of the evidence rather than by clear and convincing proof, we believe the record supports the chancellor's decision, upholding the disputed document. Appellants insist they never signed the Ferncliff deed nor gave any consideration for such a deed. While appellants argue the failure of consideration alone would invalidate any conveyance from them to Ferncliff, our courts have held no consideration is required since a deed constitutes a present grant rather than a mere promise to be performed in the future. *Parkey* v. *Baker*, 254 Ark. 283, 492 S.W.2d 891 (1973); *Goodwin* v. *Lofton*, 10 Ark. App. 205, 662 S.W.2d 215 (1984). Appellants also presented testimony by Judge Hale who stated he could not recall talking with appellants about the deed or seeing them sign it. Judge Hale further testified, however, that Mr. Wolf and Mr. Dyson were doing a lot of trading or at least talking about trading back and forth, and he did not remember what they finally came up with. He said that the person who notarized the deed was not an employee in his office. In fact, the record reflects that the disputed

document bore the signature of Ray Wolf's sister-in-law as the notary.

■ The appellee countered appellants' testimony with evidence from which it could be inferred by the chancellor that the appellants did sign the Ferncliff deed. In this respect, Ray Wolf testified he saw appellant John Dyson sign the deed in Judge Hale's office and that, a day or so later, Mr. Dyson told him his wife had also signed it. Wolf testified that the appellants were long-time friends, and because he was having marital problems with his wife and financial difficulties with the Citizens National Bank, he deeded the unencumbered portion of his property to appellants, who in turn deeded this same property to Ferncliff, a firm in which he owned stock and was an officer. This transaction, he said, kept Citizens Bank from "clouding the property" and from "attaching it." He indicated these two conveyances would serve to protect his and the appellants' interests. Apparently, his intent was to show the appellants as record title owners when, in fact, Ferncliff—a company in which Wolf had an ownership interest—held title by an unrecorded deed.[2] Although appellants argue appellee should not be allowed to benefit from such a scheme, the established law is that the parties may be bound to such an agreement. *See Murphy v. Murphy*, 165 Ark. 246, 262 S.W. 677 (1924) (wherein the court held a deed executed to defraud creditors is good between the parties); *see also McCune v. Brown*, 8 Ark. App. 51, 648 S.W.2d 811 (1983).

■■ Other evidence was presented from which the chancellor could find the appellants executed the disputed deed. For example, the appellants admitted at trial that the signatures were very similar to their own. The chancellor had other signatures by the appellants to compare with those on the Ferncliff deed. From our *de novo* review, we must agree that remarkable similarities exist when comparing them, and we can readily see how the chancellor could have concluded the signatures on the deed were genuine. *Cf. McCarty v. Blaylock, supra*, at 248 (party alleging forgery admitted, and the court agreed, that signature bore close

---

[2] Eventually, when Wolf Company defaulted on its note, the Citizens Bank foreclosed its secured interest in the house owned by Wolf Company and the indebtedness was fully satisfied upon the sale of the house.

resemblance to alleged forged one). We believe such a conclusion is reasonable, especially, as here, where neither the notary public nor a handwriting expert were called as witnesses to challenge the genuineness of the appellant's signatures. Although appellants denied signing the deeds, it is settled law that the testimony of an interested party may not be taken as uncontradicted because his testimony is contradicted as a matter of law. *Tenwick* v. *Byrd*, 9 Ark. App. 340, 659 S.W.2d 950 (1983).

In addition, the trial court also could have inferred that appellants' actions subsequent to August 1981 were inconsistent with their now-avowed ownership of the disputed tract. They paid no taxes on the land and did not list it as an asset on two financial statements appellant John Dyson said he had prepared. Appellants spent no money on the property; nor had they checked their tax liability concerning the property for one and one half years. Based upon our *de novo* review of the record, we find the chancellor's decision that appellants failed to meet their burden of proof is supported by the evidence. At the least, we are unable to say that he was clearly erroneous. *Integon Life Ins. Corp.* v. *Vandegrift*, 11 Ark. App. 270, 669 S.W.2d 492 (1984).

The second point for reversal is that the chancellor erred in correcting the legal description. Both deeds prepared in Judge Hale's office contained the same legal description. However, the deed description conveying the property from Wolf Company to the appellants was later corrected by the appellant's attorney. This legal description was accepted by both parties as the correct one. Thus, we cannot say the chancellor clearly erred in finding that the improper description on the disputed deed was the result of a mutual mistake between the parties. *See Turner* v. *Pennington*, 7 Ark. App. 205, 646 S.W.2d 28 (1983).

Finally, appellants allege the trial court erred in failing to exclude, upon their request, witness Ray Wolf. Uniform Rule of Evidence 615 provides that, at the request of a party, the court shall order the exclusion of witnesses so that they cannot hear the testimony of other witnesses. The sequestration or exclusion of witnesses is employed to expose inconsistencies in testimony and to prevent the possibility of one witness molding his or her testimony to that given by other witnesses at trial. *Fite* v. *Friends of Mayflower, Inc.*, 13 Ark. App. 213, 682 S.W.2d 457 (1985).

The Rule, however, provides certain exceptions. It does not authorize the removal of (1) a party who is a natural person or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

■ In the instant case, Ray Wolf was the secretary-treasurer of appellee, Ferncliff. The court found, and we agree, that in spite of the fact that the stock of Ferncliff had been purchased in February 1983 by First State Bank of Sherwood and Ray Wolf was no longer active in the operation of the corporation, he was still listed on record as secretary-treasurer of the corporation, and should not be excluded under Rule 615 of the Uniform Rules of Evidence. Besides, because Wolf was intricately involved in all the transactions between the parties in this action, the trial court could have easily permitted his in-court presence as essential to the presentation of the appellee's case, especially since the First State Bank did not participate in this litigation.

Affirmed.

COOPER and CORBIN, JJ., agree.