Donna Ruth GILBERT, *by and through her Guardian,*
Tracey Roberts *v.* Inez K. RAINEY

CA 01-990 71 S.W.3d 66

Court of Appeals of Arkansas
Division III
Opinion delivered March 20, 2002

*Mark S. Carter, P.A.*, by: *Mark S. Carter*, for appellant.

*Paul D. Capps* and *Dale Grady*, for appellee.

WENDELL L. GRIFFEN, Judge. The case arises from the rescission of a support deed. Donna Gilbert appeals through her guardian, Tracey Roberts, Gilbert's daughter. Gilbert appeals from a chancery order rescinding a deed for real property given to her by her mother, Inez Rainey (Rainey), appellee, in exchange for Gilbert's promise to provide Rainey care and support for life. Because Gilbert is now incapacitated, the chancellor rescinded the deed based upon the failure of consideration. Gilbert argues that the evidence was insufficient to prove that the deed was a support deed and that the chancellor erred in admitting parol evidence to explain the consideration underlying the deed. We disagree and affirm.

On April 6, 1978, Rainey and Gilbert entered into an agreement whereby the parties agreed that when Rainey became unable to care for herself in the manner to which she had grown accustomed, Gilbert would provide that level of care and comfort. Gilbert also agreed to consult with her brothers, James and Charles Rainey, with respect to major decisions concerning Rainey's care. The consideration recited was "past and future love and affection which has been and will continue from my mother to me for due consideration in mother's will and for other good and valuable consideration." Gilbert maintained daily contact with her mother beginning in 1988, when Rainey began experiencing confusion and began forgetting where she placed common household items such as keys or her purse. On January 6, 1994, Rainey's attorney drafted a quitclaim deed on Lot 2, Block 23, Park Hill Addition to North Little Rock, under which all of Rainey's right, title, and interest in the real estate was given to Gilbert.

This deed recited that "for and in consideration of the sum of ten and no/100 Dollars ($10.00) and other good and valuable consideration to me in hand paid by Donna Gilbert, Grantee, the receipt of which is hereby acknowledged . . . ." Gilbert paid Rainey one dollar and the deed was executed. After this deed was executed, Gilbert managed Rainey's bank account and investments; painted Rainey's home; repaired a television and bought a new television; added a carport; and built a fence in the back yard. Gilbert moved in with Rainey for a short period in 1998 but moved out in October 1998, when she moved in with her boyfriend.

In January 1999, Gilbert suffered brain damage from anoxic encephalopathy. Later that same year, Gilbert subsequently broke her hip, and her daughter, Roberts, was appointed as the permanent guardian of Gilbert's person and estate. Roberts thereafter made some effort to look after her grandmother by having Rainey's air conditioner serviced. However, Rainey and Roberts do not get along, and in May 1999, a mutual restraining order was issued against both parties.

On July 6, 1999, Rainey filed a complaint in chancery court seeking to set aside, rescind, and cancel the 1994 quitclaim deed. Rainey first alleged that Gilbert obtained the deed by fraud, undue influence, duress, temporary lack of capacity, and failure of consideration. However, she later amended her complaint and proceeded solely on the theory of failure of consideration. Rainey then filed a motion for summary judgment, which the court denied without a hearing. The case was tried on July 25, 2000, and August 18, 2000.

At the July hearing, over Gilbert's objection, the chancellor admitted parol evidence regarding the consideration for the 1994 quitclaim deed. At the conclusion of this hearing, Gilbert moved for a directed verdict. The chancellor denied the motion. At the conclusion of the evidence on August 18, 2000, Gilbert moved to amend her pleadings in conformity with the proof and sought alternative relief for compensation for $9,500.63 that she testified she spent in reliance on the 1994 deed.

The chancellor found that the deed was a support deed given in exchange for Gilbert supplying for life the comforts and necessities to which Rainey had become accustomed. Because of Gilbert's subsequent disability, the chancellor found there had been a failure of consideration. The chancellor determined that because the subject deed was a support deed, the true consideration of the deed may be proven by parol evidence. She noted that Roberts attempted to satisfy the obligations of support and caregiving to Rainey, but matters deteriorated to the point where a mutual restraining order was issued between them. The chancellor determined that the deed should be rescinded for failure of consideration, but asked the parties to find the evidence in the transcript of costs paid by Gilbert and to provide the information within ten days.

In a subsequent telephone conference with the parties' attorneys, the chancellor awarded Gilbert $127 for a ceiling fan that she paid for and installed. She found that Gilbert did not prove that the other improvements came from her personal funds as opposed to the funds of Rainey to which she had access, or that the improvements made enhanced the value of the residence. Therefore, the chancellor rescinded the deed. Gilbert appeals from this order. We affirm.

## I. Failure of Consideration

■ ■ Gilbert first argues that the chancellor erred in determining that the deed was a support deed subject to rescission for failure of consideration. We review chancery decisions *de novo* on the record and will not reverse unless the chancellor's findings are clearly erroneous or clearly against the preponderance of the evidence. *See* Ark. R. Civ. P. 52(a); *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997). A finding is clearly erroneous if, although there is evidence to support the trial court's findings, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *See Balletti v. Muldoon*, 67 Ark. App. 25, 991 S.W.2d 33 (1999); *Guess v. Going*, 62 Ark. App. 19, 966 S.W.2d 930 (1998). Moreover, we give due regard to the trial court's judgment regarding the credibility of witnesses.

*See* Ark. R. Civ. P. 52(a); *First State Bank v. Phillips*, 13 Ark. App. 157, 681 S.W.2d 408 (1984).

 Support deeds, by which property is granted in exchange for a promise by the grantee to care for the grantor for life, are valid in Arkansas. *See Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984). When a deed is executed in consideration of future support and maintenance and the grantee fails to fulfill the provisions of the deed, the grantor may sue at law for damages, or may sue in equity to cancel the deed for failure of consideration. *See Wood v. Swift*, 244 Ark. 929, 428 S.W.2d 77 (1968); *Welch v. Brewer*, 267 Ark. 763, 590 S.W.2d 325 (Ark. App. 1979). Evidence of failure of consideration to justify setting aside of a deed must be clear, cogent, and convincing. *See Bryant v. Bryant*, 239 Ark. 61, 387 S.W.2d 322 (1965).

Gilbert argues that Rainey was not required to deed the house to her in exchange for a promise to provide future personal services, because they had an agreement in place to that effect since 1978; and therefore, the chancellor erred in finding that the deed was a support deed. She further argues that in order to show entitlement to rescission of a support deed, the grantor must show that it was the grantee's intent to defraud the grantor from the outset. *See id.* Gilbert notes that the deed recites on its face that the consideration is ten dollars and other good and valuable consideration paid to Rainey; therefore, she asserts that the deed acknowledges that all of the consideration has been paid. Alternatively, she argues that there was no proof of failure of consideration because there was no evidence that she intentionally failed to support her mother, or intended to defraud her mother.

We hold that the chancellor did not err in finding that the deed was a support deed and that there had been a failure of consideration warranting rescission. Gilbert's argument that the 1978 agreement was a support agreement would be more compelling had she lived with her mother since that time. However, that was not the case, and the 1978 agreement notwithstanding, the evidence demonstrates that the deed was a support deed.

Gilbert and Rainey testified that the 1994 deed was given in exchange for Gilbert's promise to take care of Rainey. Charles

Rainey, Gilbert's brother, testified that Gilbert told him after she became sick that she wanted to give the house back to Rainey because she (Gilbert) was hospitalized and could no longer care for Rainey. Gilbert also testified by deposition that she wished to give the house back to her mother, although she recanted this testimony during the actual hearing. Further, the evidence demonstrates that Gilbert provided support to Rainey and lived with her for a brief period during 1998.

Further, the testimony regarding the failure of consideration is also clear. Gilbert is now unable to care for herself and lives with Roberts, who is her legal guardian. Roberts testified that Gilbert is unable to perform simple tasks such as showering herself or brushing her teeth and that she (Roberts) cares for her full-time.[1]

██ ██ Moreover, despite Gilbert's argument to the contrary, it is not necessary for the grantor to show that the grantee intended to defraud the grantor. While a grantee's intentional failure to support is grounds for rescission based on fraud, *see Millwee v. Wilburn*, 6 Ark. App. 280, 640 S.W.2d 813 (1982), the grantor is not *required* to show that the failure to support was intentional in order to obtain a rescission based on failure of consideration. *See, e.g., Welch v. Brewer, supra* (affirming a chancery order rescinding support deed where the grantees thought they were only obligated to care for the grantor for as long as they were able); *see, e.g., Euin v. Faubus*, 217 Ark. 238, 229 S.W.2d 244 (1950) (reversing and remanding for rescission where the grantee remarried after the support deed was given and could not thereafter continue to support her mother-in-law due to inadequate finances). Giving due deference to the chancellor's superior position to assess the evidence and weigh the credibility of the witnesses, we hold that the evidence in this case was sufficient to support a finding that the deed was a support deed and that the deed was properly rescinded due to Gilbert's inability to care for her mother. *See Euin v. Faubus, supra.*

---

[1] Appellee does not challenge Gilbert's competency to testify.

## II. Parol Evidence

Appellant further asserts that parol evidence may not be used to show that the deed was without consideration and that the failure of consideration alone is not sufficient to cancel a deed. *See Bryant v. Bryant*, 239 Ark. 61, 387 S.W.2d 322 (1965). Again, we find no error.

Here, the chancellor initially sustained Gilbert's objection to the introduction of parol evidence to prove the basis for the consideration to the deed. In reversing its initial ruling, the court stated that it would admit the parol evidence to establish that additional consideration was given that was not recited in the deed. Charles Rainey thereafter testified that when Gilbert was hospitalized with her broken hip, she told him that she wanted to give the house back to Rainey, because she was no longer able to care for Rainey.

Gilbert maintains this testimony was improper because testimony tending to alter, vary, or contradict a written contract is only admissible if it tends to prove a term of the agreement about which the written agreement is silent. *See Cate v. Irvin*, 44 Ark. App. 39, 866 S.W.2d 423 (1993). She notes that the deed did not recite future support as consideration, but stated that the consideration had been paid in full; therefore, she asserts, the deed was not silent with regard to consideration. Finally, she asserts that parol evidence cannot be used to disprove consideration recited on the face of the deed, for the purpose of defeating the conveyance, unless fraud is alleged, and here, no fraud has been alleged. *See Bryant v. Bryant, supra.*

Appellant's reliance on *Bryant, supra* and *Cate, supra* is misplaced. It is true that where a conveyance is voluntary and absolute on its face, the question of the adequacy of consideration is not grounds for setting aside a voluntary conveyance. *See Millwee v. Wilburn, supra.* However, that is not the issue in this case. Further, the parol evidence in this case was not used to disprove the consideration cited on the face of the deed; therefore, no finding of fraud was necessary in order for the chancellor to find that rescission was proper.

■ While parol evidence may not be used to contradict recitals of consideration in a deed, it may be allowed to show that the consideration has not been paid as recited or to establish that other consideration not recited in the deed was agreed to be paid if it does not contradict the terms of the writing. *See Bryant v. Bryant, supra.* Our courts have allowed parol evidence to be admitted to specifically prove that a deed was given in exchange for support for the duration of the grantor's life where the deed contained no language to that effect. *See, e.g., Welch v. Brewer, supra.*

■ As in *Brewer*, here the parol evidence was not proffered to vary or contradict the consideration recited on the face of the deed. Rather, it was offered to prove that Rainey gave the deed to Gilbert in exchange for a promise to provide care and support to Rainey for the remainder of her life. Therefore, we hold that the chancellor did not err in admitting the parol evidence in this case.

### III. Reliance Expenditures

Gilbert's final argument is that the trial court erred in its determination that she was only entitled to be reimbursed $127. She maintains the evidence demonstrates that she spent $9,500.63 between November 1994 and September 1998 to provide for Rainey and in maintaining and improving the property on which she lived. Gilbert provided receipts for this amount and maintains that it is unrefuted that the money was spent on Rainey's property. Gilbert also testified that she personally paid for all of the expenditures and she notes there was no proof the money came from any other source.

■ We hold that the chancellor did not err in finding that Gilbert was only entitled to be reimbursed $127. A simple review of the receipts offered at the hearing supports the chancellor's finding that she was unable to determine which expenditures were made from Gilbert's personal funds as opposed to being taken from Rainey's funds to which Gilbert had access. There are receipts in both Rainey's name and Gilbert's name, but there is no indication as to where the money came from that was used to pay

for the expenditures. Even after the chancellor gave Gilbert additional time to prove that she personally incurred these expenses, the only proof offered was Gilbert's testimony that she paid for these expenses herself. The chancellor was not required to believe her testimony, particularly in light of the fact that she had difficulty remembering certain events, due to the brain damage she suffered as a result of her illness, and given that she recanted her testimony that she wished to give the house back to Rainey.

Further, it is not clear that all of these purchases were made for Rainey's benefit. For example, the chancellor noted that the television that was purchased can be removed as personal property. In addition, Roberts testified that Gilbert built the fence because she needed a place to keep her dogs. Moreover, Rainey already had a garage, and she testified that Gilbert built the carport and that "Tracey [Roberts] did that for herself." Finally, the chancellor found there was no evidence by which she could determine whether the improvements enhanced the value of the home, which would evince an intent to act for Rainey's benefit.

The chancellor stated: "I looked at the evidence that had been presented in this case and I don't think it's the role of the Court to try and fill in the amounts and try and determine how much something was worth . . . I really don't have that evidence in the record." She further stated that "[t]he only thing that I saw that I could reasonably find that [Gilbert] should be entitled to, would be $127.00 to hang the ceiling fans because obviously somebody hung ceiling fans that are there in the house now and they're still there in her mother's house."

Given the dearth of evidence concerning the source of funds from which the improvements were made and again deferring to the chancellor's superior position to weigh the evidence and assess the credibility of the witnesses, we cannot say that we are left with a definite and firm conviction that the chancellor erred in only awarding Gilbert $127.

Affirmed.

STROUD, C.J., and JENNINGS, J., agree.